Kevin H. Breck, WSBA #39183
Winston & Cashatt, Lawyers
Bank of America Financial Center
601 W. Riverside, Suite 1900
Spokane, WA 99201
(509) 838 1416 (fax)
(509) 838 6131
Email: khb@winstoncashatt.com

Lewis Perling (admitted *pro hac vice*)
King & Spalding LLP
1180 Peachtree Street
Atlanta, GA 30309
Phone:  (404) 572-4600
Fax:     (404) 572-5100
Email: lperling@kslaw.com

HON. RICARDO S. MARTINEZ

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SURINDER S. BRATCH, )<br><br>                 Plaintiff, )<br><br>v. )<br><br>EQUIFAX INFORMATION SERVICES )<br>LLC, and EXPERIAN INFORMATION )<br>SOLUTIONS, INC., )<br><br>                 Defendants. ) | Case Number:  2:09-cv-01724-RSM<br><br>**DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**NOTE ON MOTION CALENDAR: MAY 6, 2011** |

Defendant Equifax Information Services LLC ("Equifax") submits this Motion For Partial Summary Judgment.  As discussed below, the motion should be granted.

### INTRODUCTION

On December 3, 2009, Plaintiff filed this action against Equifax and Experian Information Solutions, Inc. ("Experian"), for allegedly willfully and negligently violating the Fair Credit Reporting

Act, 15 U.S.C. §§ 1681e(b) and 1681i ("FCRA"), violating the Washington State Consumer Protection Act ("WCPA"), defamation, and invasion of privacy/intrusion upon seclusion. (Doc. 1.) On March 2, 2011, Plaintiff amended the Complaint, removing all factual allegations, adding claims under §§ 1681b and 1681g of the FCRA, and dropping the privacy/intrusion claim. (Doc. 50.) Equifax moves for judgment under Rule 56 on the claims for defamation, violation of the WCPA, violations of §§ 1681b and 1681g of the FCRA, all alleged willful violations of the FCRA, all claims and damages that are outside of the statute of limitations, and all claims for economic damages. Equifax denies that Plaintiff should recover at all, but the only remaining claims for trial should be for negligent violations of §§ 1681e(b) and 1681i(a) of the FCRA and for non-economic damages sustained during a limited time.

Equifax is a consumer reporting agency under the FCRA and maintains a database that includes a credit file for Plaintiff. In 1992, when Plaintiff and his family emigrated to the United States, he and his brother received Social Security numbers that are almost identical, differing by just one digit. The brothers have lived at the same address almost continuously since they moved to the Untied States.

Plaintiff has several items of accurate derogatory credit. In July 2008, Plaintiff contacted Equifax and disputed some of that information. Plaintiff made no mention of his brother with similar name, address, and Social Security number. In an attempt to assist Plaintiff and resolve his dispute, one of Equifax's agents combined the files of the brothers. Equifax's agents are trained to identify two credit files that appear to belong to one person and combine them in the dispute resolution process.

On October 27, 2008, after Plaintiff discovered that his credit file contained information belonging to his brother, he contacted Equifax and requested removal of the incorrect items. Equifax did just that and, by December 9, 2008, the items were suppressed. Plaintiff's file only included information that belonged to his brother for approximately five months. Based on these facts, Plaintiff seeks to hold Equifax liable for willfully violating the FCRA.

Equifax is entitled to partial summary judgment on Plaintiff's claims as the undisputed facts demonstrate that Plaintiff cannot prevail here for the following reasons: (1) some of Plaintiff's claims

1  are barred by the statute of limitations; (2) Plaintiff's alleged economic damages relate solely to his

2  business; (3) Plaintiff has no evidence of proximate causation for his purported economic damages; (4)

3  Equifax's actions did not rise to the level of a willful violation of the FCRA; and, (5) Plaintiff's

4  defamation, WCPA, and §§ 1681b and 1681g claims lack factual support.  Accordingly, and as

5  discussed in detail below, the Court should grant Equifax's motion for partial summary judgment.

6  <u>**STATEMENT OF UNDISPUTED FACTS**</u>

7  **I.    EQUIFAX POLICES AND PROCEDURES**

8   **A.    Background On Equifax's Business**

9    Equifax is a consumer reporting agency within the meaning of the FCRA.  (Declaration of

10  Ladameya Mixon, ¶ 4, attached as Exhibit A and hereafter referred to as "Mixon Dec.").  Equifax

11  receives information from creditors, public records, merchants, and other sources and assembles that

12  information into credit reports that it provides to subscribers who have a permissible purpose for

13  obtaining the reports.  (*Id*., ¶ 5.)  Equifax accepts information regarding a consumer's credit only from

14  those sources of credit information that, either on the basis of Equifax's prior experience, or because of

15  the particular source's reputation, are determined to be reasonably reliable sources.  (*Id*., ¶ 6.)

16   **B.    Equifax's Reasonable Procedures Concerning Reinvestigation**

17    Equifax maintains reasonable procedures designed to assure maximum possible accuracy of the

18  information in the credit files that it maintains and to address disputes that it receives from consumers

19  concerning information contained in their credit files.  (*Id*., ¶ 7.)  The following is an explanation of

20  Equifax's reinvestigation procedures.

21    Upon receipt of a consumer dispute, Equifax first locates the consumer's file in its database

22  based on the identifying information.  (*Id*., ¶ 8.)  If the consumer has not provided sufficient

23  information, then Equifax sends a letter to the consumer requesting additional information.  (*Id*.)  If

24  Equifax locates more than one file, it will first attempt to determine if the two files belong to the same

25  person and, if so, it will combine the files.  (*Id*.; Deposition of Ladameya Mixon, 44:14-21, portions

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

1   attached as Exhibit B and hereafter referred to as "Mixon Dep." )

2        Equifax reviews the consumer's credit file and considers all relevant information provided by the

3   consumer regarding the dispute.  (Mixon Dec., ¶ 9.)  If Equifax is able to make updates, it will undertake

4   those immediately.  (*Id.*)  For example, Equifax will immediately update when the consumer has

5   changed a name or address and provides Equifax with sufficient proof of the change.  (*Id.*)

6        If further investigation is required, then Equifax notifies the source of the account information

7   (referred to as the "data furnisher"), advises it of the consumer's dispute, describes all relevant

8   information, and provides the consumer's account information as it currently appears on the credit file.

9   (*Id.*, ¶ 10.)  Equifax requests the data furnisher to investigate the consumer's dispute and advise Equifax

10  if the account information is inaccurate.  (*Id.*)  These communications are generally made through a

11  process wherein Equifax electronically transmits a form called an Automated Consumer Dispute

12  Verification ("ACDV").  (*Id.*, ¶ 11.)

13       If the data furnisher advises Equifax to delete or otherwise update the account information, then

14  Equifax takes the necessary action.  (*Id.*, ¶ 12.)  If the data furnisher investigated the item and verifies

15  that it is accurate, Equifax will generally take no action.  (*Id.*)  Depending on the circumstances, Equifax

16  may conduct additional investigation (such as contacting the data furnisher again or contacting the

17  consumer) or apply certain rules (such as its verified victim policy, which eliminates all alleged

18  fraudulent accounts opened around the time of a verified fraud), which could result in the account being

19  updated.  (*Id.*)  Ultimately, an Equifax employee, called a "Maintenance Reviewer," analyzes the

20  dispute and results before sending them out to the consumer.  (*Id.*)  Following the completion of its

21  reinvestigation, Equifax sends the consumer a letter containing the results of the reinvestigation along

22  with a summary of the consumer's rights under the FCRA.  (*Id.*, ¶ 13.)  If, however, Equifax is unsure of

23  the correct current address for the consumer, it will send the person a letter asking him or her to provide

24  proof, such as driver's license and a utility bill.  (*Id.*)

25

### C.    Equifax Maintains Reasonable Mixed File Procedures

Equifax maintains special procedures for a consumer contact that it identifies as a "mixed" dispute.  (*Id.*, ¶ 14.)  Whenever a consumer disputes an account as not belonging to him or her, Equifax will treat the dispute as a mixed file investigation if certain criteria are met, such as when the consumer states that they believe they are being confused with someone with similar identifying information.  (*Id.*, ¶ 15.)  In this circumstance, Equifax agents take additional actions on the credit file, including adding a "Do-Not-Combine" and suppressing disputed identifying information, such as an incorrect name, address, or Social Security number.  (*Id.*, ¶ 16; Mixon Dep., 39:16-41:14; 44:3-45:22.)  These actions serve to prevent the addition of incorrect information to the consumer's file and prevents the file from automatically combining with another.  (*Id.*, ¶ 17.)

The agent also will attempt to locate a second file with the similar identifying information.  (*Id.*, ¶ 18.)  This second file is termed the "N file."  (*Id.*, ¶ 19.)  Equifax will "cross block" both the consumer's file and the N file.  (*Id.*, ¶ 20.)  Cross blocking is a procedure to prevent the mixing of files and the posting of incorrect information by suppressing incorrect identifying information on the files.  (*Id.*, ¶ 21.)

### D.    Equifax's Matching Procedures

Equifax maintains credit files on more than 200,000,000 consumers.  (Declaration of Margaret Leslie, ¶ 4, attached as Exhibit C and hereafter referred to as "Leslie Dec.").  Equifax creates files based on the identifying information that data furnishers provide and updates the file as new information comes in that matches the file in the system.  (*Id.*, ¶ 5.)  Over one billion updates from thousands of data furnishers are sent to Equifax's database every month.  (*Id.*, ¶ 6.)  Equifax's computer system sorts the update information onto the existing consumer files by matching identifying information.  (*Id.*, ¶ 7.)

Equifax's matching search is highly sophisticated and utilizes algorithms based on 13 matching elements and all possible combinations of those 13 elements.  (*Id.*, ¶ 8)  The 13 elements that Equifax uses to identify a unique consumer's correct file include: last name, first name, middle name, suffix,

---

gender, street number, street name, date of birth, city/state/zip code, Social Security number equal and close to equal, age, and account number.  (*Id*., ¶ 9.)  Equifax does not require an exact match of all 13 elements because personal circumstances of consumers often change, such as marriage, name changes and moves to new locations.  (*Id*., ¶ 10.)  In addition, Equifax's system is communicating with thousands of other systems and the data furnishers provide information through various paths (such as handwritten or faxed documents, or via phone), and do not always receive or provide complete information. (*Id*., ¶ 11.)  Further, Equifax knows that people working for data furnishers are human -- they do not always hear things correctly or spell names correctly, and they can make typographically errors.  (*Id*., ¶ 12.)  All of these facts go into Equifax's system rules.  (*Id*., ¶ 13.)

The minimum number of elements to match an account to a consumer is three.  (*Id*., ¶ 14.)  However, Equifax uses all 13 elements, or whatever subset of them is provided, to assess the match. (*Id*., ¶ 15.)  The three pieces of information have to be a "strong" match based on weight given by Equifax's comparison control table.  (*Id*., ¶ 16.)  There are 8,192 possible combinations in the comparison control table.  (*Id*., ¶ 17.)  The Social Security number is considered strong, because it is consistent -- one does not typically change a Social Security number and it is usually kept for life.  (*Id*., ¶ 18.)  Also, it is a private piece of data that is generally not widely known to other persons.  (*Id*., ¶ 19.)

Equifax does not require an exact match of all digits of a Social Security number before matching an account to a credit report.  (*Id*., ¶ 20.)  If the number is a 9-for-9 match, it is considered exact.  (*Id*., ¶ 21.)  If the number is an 8-for-9 match, it is considered a possible match.  (*Id*., ¶ 22.)

Equifax uses the same matching logic for any credit file search.  (*Id*., ¶ 23.)  In other words, Equifax's search is the same for matching incoming accounts to files, matching files to inquiries by creditors, and matching files to be reinvestigated if Equifax receives a dispute.  (*Id*.)

## II.   PLAINTIFF, SURINDER BRATCH, AND HIS BROTHER, SUKHVINDER BRATCH

### A.   Plaintiff And His Brother Have Very Similar Identifying Information

In 1992, Plaintiff, Surinder Bratch, and his family emigrated to the United States from India.

(Deposition of Surinder Bratch, 8:8-11, portions attached hereto as Exhibit D and hereafter referred to as "Bratch Dep.")  He received Social Security number xxx-xx-4625.  (Complaint, ¶ 28; Bratch Dep., 8:15-22.)  His brother, Sukhvinder, received the nearly identical Social Security number xxx-xx-4825 -- an 8-for-9 match of digits.  (Complaint, ¶ 28; Bratch Dep., 62:13-16; 427:2-14.)  In 1997, the brothers changed their last name from Singh to Bratch.  (Bratch Dep., 8:24-9:15.)  The brothers lived at the same address through October 2008.  (*Id.*, 11:13-17; 14:15-22; 37:14-16; 212:22-213:3; 426:23-427:1.)  In August 2010, Plaintiff moved back in with his brother.  (*Id.*, 427:23-429:4.)

### B.    Plaintiff's Disputes With Equifax

#### 1.    No Bankruptcy Public Record On Plaintiff's Credit File Pre-July 2008

Plaintiff claims that he, or an attorney on his behalf, Ron Gomes, contacted Equifax and disputed the appearance of a bankruptcy on his credit file in 2004.  (Complaint, ¶¶ 25-27, 29; Bratch Dep., 156:7-14.)  Equifax, however, has no record of a dispute from Plaintiff from 2003 through July 2008, and no record of a dispute from an attorney in 2004, or ever.  (Mixon Dec., ¶ 22.)  Although Plaintiff claims that he hired an attorney, Ron Gomes, to dispute the inaccurate information on his behalf, he testified that he only "thinks" Gomes contacted the consumer reporting agencies, but does not know when or how.  (Bratch Dep., 386:24-389:5.)  No bankruptcy reported in the public records section of his consumer report in 2004 or at any time prior to July 2008.  (Leslie Dec., ¶ 24.)

In 2004, Volvo Commercial Finance ("Volvo") reported two accounts that contained a "Z" code, indicating "included in bankruptcy."  (*Id.*, ¶ 25.)  The frozen scans (historic snap-shots of the credit file) show, however, that as of January 2005, the Volvo accounts were no longer reporting.  (*Id.*, ¶ 26.)  Plaintiff admits that there was no bankruptcy on his file by April 2005.  (Complaint, ¶ 30; Bratch Dep., 400:23-401:20; Ex. 52.)  Equifax did not, at any time, reinsert a Volvo account, or any other information, onto Plaintiff's credit file.  (*Id.*, ¶ 27.)

#### 2.    Plaintiff Disputes Some Of His Own Account Information

In July 2008, Plaintiff contracted with a "credit correction firm," USCCRA, to assist him with

1   cleaning up some derogatory information on his credit file.  (Bratch Dep., 41:14-21.)  USCCRA

2   employed an attorney, William Shofstall, to contact the consumer reporting agencies.  (Complaint, ¶

3   34.)  Plaintiff claims that in July 2008, Shofstall sent "a round" of dispute letters to Equifax and

4   Experian.  (*Id.*)  Equifax, however, did not receive such a letter from Shofstall and Plaintiff has no proof

5   that one was sent.  (Mixon Dec., ¶ 23; Mixon Dep., 108:23-109:5, 113:16-114:3; Bratch Dep., 44:3-5,

6   45:5-17, 496:10-19; 513:9-514:18.)

7         Instead, on July 7, 2008, Equifax received a letter directly from Plaintiff stating that 8 accounts

8   had never been paid late and 2 accounts were closed.  (Mixon Dec., ¶ 24; Mixon Dep., 48:12-49:5,

9   53:16-54:21; Bratch Dep., 498:3-9, Ex. 65.)  Plaintiff also included his Social Security card, driver's

10  license, and utility bill.  (*Id.*)  He did not, however, dispute any identifying information on the file nor

11  give Equifax any indication that his file was combined with his brother's, despite his claim that his

12  brother's bankruptcy was reported by Equifax years earlier.  (Mixon Dec., ¶ 25; Mixon Dep., 93:16-

13  94:2; Complaint, ¶¶ 25, 30; Bratch Dep., 37:25-38:8.)  Plaintiff did not mention his brother or the

14  bankruptcy at this time.  (Mixon Dec., ¶ 26.)

15        Upon receipt of Plaintiff's dispute, Equifax utilized its search match logarithm, described above,

16  to locate the credit file.  (*Id.*, ¶ 27.)  If more than one file was returned, the agent was trained to review

17  the files for similarity and if they appeared to belong to the same person, to combine them.  (*Id.*, ¶ 28.)

18  In fact, that is exactly what the agent did.  (Leslie Dec., ¶ 28.)  On July 10, 2008, he changed one digit in

19  the Social Security number on the brother's credit file so that the two files combined.  (*Id.*)  He then

20  addressed the Plaintiff's concerns, deleting two accounts and verifying the information on the others,

21  and on July 29, 2008, sent him a letter containing the results of the reinvestigation.  (Mixon Dec., ¶¶ 29,

22  30; Mixon Dep., 54:22-55:3, 73:5-7.)

23         **3.     Equifax Separated The Bratch Files Immediately Upon Next Contact**

24        Plaintiff did not contact Equifax again for three months.  (Mixon Dec., ¶ 31.)  Then, on October

25  27, 2008, Equifax received a letter from Plaintiff disputing some items that he claimed were never late

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

and others as belonging to "someone else in [his] family," including a bankruptcy -- that Plaintiff states was filed by his brother --, several accounts, and several inquiries.  (Complaint, ¶ 39; Mixon Dec., ¶ 34, Mixon Dep., 178:21-179:2, 179:23-180:6; Bratch Dep., Ex. 69.)  Attached to his letter was the first page of the docket for the bankruptcy that appeared on his credit file and included his brother's identifying information.  (Mixon Dec., ¶ 31.)  The letter was the first time that Plaintiff stated that he believed accounts on his file belonged to someone else in his family.  (*Id*., ¶ 32.)

Equifax identified the letter as a "mixed file" dispute.  (*Id*., ¶ 33.)  Equifax promptly suppressed the information that Plaintiff stated did not belong to him.  (*Id*.,¶ 34.)  Equifax also performed other "mixed file" functions, such as adding a "do not combine" and cross blocking.  (*Id*., ¶ 35; Mixon Dep., 217:6-218:19.)  Equifax also updated the accounts that Plaintiff claimed were not late.  (Mixon Dec., ¶ 36.)  In short, Equifax did everything that Plaintiff asked it to do.  (*Id*., ¶ 37.)  As Plaintiff admits, by early 2009, his brother's bankruptcy and accounts were no longer on his credit file.  (Complaint, ¶ 40; Bratch Dep., 532:2-11, 538:20-540:9, Ex. 73.)

Equifax did not send Plaintiff the results of the reinvestigation at that time because it was not sure of Plaintiff's correct address.  (Mixon Dec, ¶ 38.)  Previously, on November 6, 2008, Equifax sent Plaintiff a request for proof of his identifying information to verify his identification and address.  (*Id*., ¶ 39; Mixon Dep., 148:21-148:3.)  When Plaintiff responded to that letter on or about January 2, 2009, Equifax sent him a consumer credit file.  (Mixon Dec., ¶ 40; Mixon Dep., 238:16-239:14, 239:24-240:14; Bratch Dep. 540:12-542:9, Ex. 74.)  Plaintiff also accessed his credit file online on December 29, 2008 and was aware of the updates.  (Bratch Dep., 539:2-540:9, Ex. 73.)  Plaintiff found nothing incorrect reported by Equifax at that time.  (*Id*.)

## III.   CLAIMS AND DAMAGES PRE-2007

Plaintiff alleges that he incurred damages after he discovered that his brother's information was on his credit file, but before December 3, 2007, which is two years prior to the filing of this case.  Plaintiff prepared written explanations of his alleged damages for this lawsuit. (Bratch Dep., Exs. 41,

44.)  Most of the items listed predate December 2007.  (*Id.*, 180:10-182:6, Exs. 41, 44.)  For instance, Plaintiff claims that: he had to pay a higher interest rate in 2003 on a truck loan, (*Id.*, 202:20-203:24, Ex. 41;) he did not have sufficient credit to take a vacation in 2002 and had to cancel his honeymoon,  (*Id.*, 205:2-206:8, Ex. 41;) his lack of credit allegedly prevented him from buying gifts for his wife in 2003 or taking her on vacations, including on their first anniversary, (*Id.*, 206:23-207:20, 219:20-220:19, 222:24-223:9, Ex. 41;) he could not rent an apartment in 2004, (*Id.*, 208:7-210:25, Ex. 41;) he could not go snowmobiling in 2003, (*Id.*, 213:24-214:14, Ex. 41;) he could not help build community parade floats in 2003, (*Id.*, 215:10-216:15, Ex. 41;) he could not spend time with his grandfather, who passed away in 2003, (*Id.*, 218:20-25, Ex. 41;) he cancelled his daughter's first birthday party in August 2006 because of Equifax, (*Id.*, 234:11-236:22, Ex. 41;) he gave up trying to learn folk dancing in 2005, (*Id.*, 273:10-20, 274:11-16, Ex. 44;) he was unable to accompany his family for a portrait in 2006, (*Id.*, 275:6-16, Ex. 44;) and, he had numerous credit card and account denials that predate November 2007.  (Bratch Dep., 185:2-189:21, 195:10-23, Ex. 41.)  Plaintiff also claims that the terms of his 2005 mortgage loan were adversely impacted, including having to pay a higher interest rate, because of Equifax.  (*Id.*, 258:6-261:24: 264:22-265:9; 266:13-267:23.)  He claims that when he purchased a tow truck in 2006, he was charged a higher interest rate due to Equifax.[1] (*Id.*, 332:7-19.)  Finally, he claims he was denied credit by Beneficial in July 2006 when he attempted to refinance his home loan.[2] (*Id.*, 334:23-335:20.)

## IV.   NO PROOF EQUIFAX CAUSED ANY RECOVERABLE ECONOMIC DAMAGES

Plaintiff "has no clue" about the total amount of damages that he is seeking in this lawsuit.  (*Id.*, 97:20-98:1.)  Despite an Interrogatory on the topic and deposition questions, Plaintiff was unable to provide Equifax with the name of any potential creditor to whom Equifax made a report that contained inaccurate information about him.  (*Id.*, 379:14-380:22, Ex. 51, Response to Interrogatory No. 17.)

---

[1]  Plaintiff does not know why the interest rate was higher and does not know if the lender used a credit report.  (Bratch Dep., 332:20-333:11.)

[2]  Again, he does not know if the creditor used an Equifax credit report.  (Bratch Dep., 336:23-337:2.)

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

1   Plaintiff contends, however, that he has been denied credit based on the contents of his Equifax

2   credit file.  (*Id.*, Exs. 49, 51, Response to Interrogatory No. 6.)  The "denials summary" provided in

3   response to Equifax's Interrogatory asking for damages information lists all of the denials of credit that

4   he claims in the case.  (*Id.*, 330:9-331:14, Ex. 49, Ex. 51, Response to Interrogatory No. 6.)  Only a few

5   of the items, however, are actual denials of credit.  (*Id.*)  Some, in fact, are approvals of credit and do

6   not relate to any damage to Plaintiff.  (*Id.*, 331:15-332:6, 335:3-22, 343:15-344:9, 345:6-24.)  As shown

7   below, it is undisputed that Plaintiff has not been denied a loan or any credit during the relevant period

8   of time for this case based on the contents of his Equifax credit file.

9   **A.      Claims Related To Plaintiff's Business**

10   In 1999, Plaintiff started a business, Bratch Auto Body  ("BAB").  (Complaint, ¶ 31; Bratch

11   Dep., 16:10-20.)  In 2003, the business was converted to a corporation. (Complaint, ¶ 31; Bratch Dep.,

12   16:21-17:1.)  Plaintiff is a W-2 employee of BAB.  (Bratch Dep., 375:11-19.)  Plaintiff has separate

13   personal and business checking accounts.  (*Id.*, 33:1-17.)

14   Plaintiff claims that in January 2003, the rent for BAB was increased from $2,400 per month to

15   $4900 per month.  (Complaint, ¶ 31; Bratch Dep. 83:16-20.)  Plaintiff "thinks" that the rent was

16   increased because of negative credit history, but has no record of the reason for the alleged increase.

17   (*Id.*, 83:21-84:24.)  Plaintiff does not know if an Equifax credit report was utilized by the landlord.  (*Id.*,

18   306:25-307:3.)  In March 2009, the rent was reduced to $3,500, though he does not know if the landlord

19   used a credit report in that decision either.  (*Id.*, 549:4-11, 551:7-12.)

20   Plaintiff also claims that vendors have refused to extend credit to BAB.  (Complaint, ¶ 31;

21   Bratch Dep., 188:11-22.)    In May, 2004, Wesco Group, one of BAB's suppliers, denied credit for the

22   business.  (*Id.*, 111:6-112:8; 385:8-386:23, Ex. 33.)  BAB has also done business with Parts Central

23   since 2003, but has been unable to obtain credit.  (*Id.*, 120:14-121:2, 123:7-13, 342-9-14, 543:7-18, Ex.

24   39.)  Wesmar is another company that Plaintiff claims denied BAB credit in 2004 or 2005.  (*Id.*, 121:17-

25   24, 342:25-343:3, 547:4-10, Ex. 40.)  Plaintiff provided no evidence that any of these businesses refused

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

1  credit based on an Equifax credit report.  (*Id.*, 188:19-22).  Further, BAB currently has credit with its

2  vendors, including Wesco.  (*Id.*, 35:9-36:4; 123:14-21.)

3      Plaintiff claims that in November 2004 he wanted to purchase commercial real estate.  (*Id.*,

4  107:11-108:16.)  He was not, however, denied credit.  (*Id.*)  Plaintiff "believes" that he attempted to

5  purchase commercial real estate a couple of times since then, but was unsuccessful.  (*Id.*, 108:22-25.)

6  He does not know if any credit applications were ever submitted.  (*Id.*, 389:9-395:20, Exs. 30, 31, 32.)

7      He also claims that he made several attempts to upgrade and expand BAB.  In 2004, he claims

8  that BAB was denied credit because his "credit was bad."  (*Id.*, 26:18-27:14.)  He states that in 2006 he

9  tried again to upgrade but BAB was denied a loan from Bank of America.  (*Id.*, 27:15-21.)  In March

10 2008, BAB applied for a line of credit with KeyBank.  (Complaint, ¶ 32; Bratch Dep., 118:9-13; 119:1-

11 12, 338:5-9, 467:23-469:4; 472:21-473:2, Ex. 38.)  He claims that KeyBank denied him credit, although

12 there is no indication that Equifax provided any information that formed the basis of the denial.  (Bratch

13 Dep., 475:15-25.)  Finally, in September 2008 BAB attempted to obtain a business credit account with

14 Bank of America, but was denied.  (*Id.*, 115:1-116:9, 339:14-341:20, 517:25-518:18, Ex. 36.)

15     Plaintiff bundles these attempts to expand and obtain credit for BAB and claims lost revenues

16 from 2004 through 2008 in excess of $400,000.  (*Id.*, 84:25-86:16, 250:8-251:21; Deposition of Kerani

17 Lianos, 8:18-9:13, attached as Exhibit E and hereafter referred to as "Lianos Dep.")  His purported

18 expert, Kerani Lianos, testified that she calculated the lost revenue to BAB as a result of its assumed

19 inability to expand in 2004 and its inability to get financing or credit from its vendors.  (Lianos Dep.,

20 10:11-24, 85:8-20, 87:13-17, 128:24-131:13.)

21     **B.    Claims Related To Damages Caused By Other Consumer Reporting Agencies**

22     In November 2005, Plaintiff applied for a mortgage loan and claims that it was approved, but at a

23 higher interest rate than he should have received.  (Bratch Dep., 452:2-456:3, Ex. 59.)  Plaintiff,

24 however, does not know if Equifax had anything to do with this loan application.  (*Id.*, 455:20-23.)  The

25 notice from the mortgage company states that Plaintiff needed to call **Experian** to fix the credit file and

---

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

made no mention of Equifax.  (*Id.*, 455:24-456:3, Ex. 59.)

In May 2008, Plaintiff attempted to refinance his mortgage and, when his credit report was pulled, a bankruptcy was reported.  (Complaint, ¶ 33; Bratch Dep., 478:25-479:13, Ex. 62.)  Again, however, Equifax did not report the inaccurate information, which was instead provided by **Experian**. (Bratch Dep. 482:5-18, 483:11-484:15, Ex. 62).

In addition to the mortgage denials based on information provided by **Experian**, there were two instances in which BAB applied for credit and was denied based on **Experian** credit reports, not Equifax.  In April 2006, BAB was denied a business line of credit with Bank of America based on information supplied by **Experian**, not Equifax.  (*Id.*, 112:11-113:19, 337:6-338:4, Exs. 34, 49.)  Then, in August 2008, BAB applied for business credit with Washington Mutual.  (*Id.*, 116:11-117:16, 338:21-339:5, Ex. 37). The denial of credit was based on information supplied by **Experian**, not Equifax.  (*Id.*)

## ARGUMENT AND CITATION TO AUTHORITY

## I.   DISMISSAL OF THE MAJORITY OF PLAINTIFF'S FCRA CLAIMS IS WARRANTED

### A.   FCRA's Statute Of Limitations Bars Most Of Plaintiff's Claims And Damages

The statute of limitations for claims brought pursuant to the FCRA states that an action "may be brought . . . not later than the earlier of" (1)  2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs. 15 U.S.C. § 1681p; *Andrews v. Equifax Information Services LLC*, 700 F. Supp. 2d 1276, 1277 (W.D. Wash. 2010).  Under this Section, any claim that Plaintiff discovered prior to December 3, 2007 arising from a violation of the FCRA is time barred.  Further, any claim that predates December 3, 2004 is barred, regardless of when it was discovered.  Both provisions come into play in this case and both bar claims for damages brought by Plaintiff.

### 1.   Claims Discovered More Than Two Years Prior To Filing Are Barred

In *Andrews*, the plaintiff alleged that her file was mixed with another consumer's file and then disseminated to third parties.  *Id*.  Equifax moved for summary judgment on her FCRA claims on the

---

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

grounds that they were barred by the two year statute of limitations. *Id*. The Court stated that "[i]ndisputably, the plain language of the statute now turns upon the date that a plaintiff acquires knowledge of the alleged violation – not the date of the alleged violation itself." *Id*. at 1278. The Court denied Equifax's motion on the grounds that it did not provide sufficient evidence that would tie reports it generated to Plaintiff's discovery of the precise violations alleged in the lawsuit. *Id*. at 1279. "More importantly," the Court held, "Equifax did not adequately support its assertion that Plaintiff received its reports and thereby 'discovered' the alleged violations." *Id*. The Court found that *Andrews* did not know of the inaccuracies in her credit report and thus Equifax did not carry its burden of establishing that Plaintiff discovered a violation of the FCRA more than two years prior to filing the lawsuit. *Id*.

The evidence here is much different. It is undisputed that Plaintiff discovered as early as 2004 that Equifax allegedly included inaccurate information in his credit file, including accounts related to bankruptcy. In fact, he says in his Complaint that in 2004 he "became aware" that a bankruptcy had been reported by Equifax since 2001 and that he retained an attorney to dispute it.[3] (Complaint, ¶¶ 25-29.) Contrary to *Andrews*, it is established by undisputed fact here that Plaintiff knew of the alleged reporting of inaccurate information in 2004 and therefore discovered an alleged FCRA violation. Any claims related to that reporting, including virtually all of Plaintiff's alleged damages, are time barred.

The only potential claims that are viable under the statute of limitations her relate to the short window of time from July 2008, when Equifax's agent combined the brothers' files, to December 2008, when Equifax separated them. Any damages would be limited to occurrences, including denials of credit, based on an Equifax report during that time. Plaintiff has not presented any evidence of such damages.

### 2.    Claims Arising More Than Five Years Prior To Filing Are Barred

Congress amended the FCRA's statute of limitations in 2003 to provide a two-year limitations

---

[3]   As explained in section II. B. 1. of the Statement of Facts above, Equifax *did not* report a bankruptcy on Plaintiff's credit file. Instead, two accounts had "included in bankruptcy" notations.

period from discovery of the alleged violations, thus broadening the prior discovery rule, but, importantly for this case, also provided what one court has called an "absolute limitation" of five years, regardless of when or even whether the alleged violation was discovered.  *See Yarish v. Downey Fin. Corp.,* 2009 WL 1208178, *2 (E.D. Va. Apr. 28, 2009).  In that sense, the "absolute limitation" period of five years functions as a statute of repose because, in essence, it extinguishes any FCRA cause of action if brought "5 years after the date on which the violation that is the basis for such liability occurs." 15 U.S.C. § 1681p.  The five-year absolute limitation period "creates a substantive right" for the FCRA defendant "to be free from liability after a legislatively-determined period of time."  *First United Methodist Church Of Hyattsville v. U.S. Gypsum Co.*, 882 F.2d 862, 866 (4th Cir. 1989).  It is "an absolute time limit beyond which liability no longer exists and is not tolled for any reason because to do so would upset the economic balance struck by the legislative body."  *Id.*

Accordingly, any claim brought by Plaintiff -- or damages incurred by Plaintiff -- based on action predating December 3, 2004 (five years before Plaintiff filed his complaint) is absolutely time barred.  As listed above, a plethora of Plaintiff's alleged damages stem from the alleged reporting by Equifax of a bankruptcy on Plaintiff's credit file in 2004.  Those claims are barred by the five-year statute of limitations.

## B.     Plaintiff's Alleged Business Damages Are Not Recoverable Under The FCRA

By its express terms, the FCRA applies only to applications for credit "to be used primarily for personal, family, or household purposes."  15 U.S.C. § 1681a(d); *Johnson v. Wells Fargo Home Mortg., Inc.,* 558 F. Supp. 2d 1114, 1123 (D. Nev. 2008); 116 Cong. Record 36, 572 (1970) ("The purpose of the Fair Credit Reporting Bill is to protect consumers from inaccurate or arbitrary information in a consumer report . . . . *It does not apply to reports used for business, commercial, or professional purposes.*") (emphasis added).  Necessarily then, the FCRA does not provide for damages resulting from an attempt to secure credit for business purposes. *Johnson,* 558 F. Supp. 2d at 1122 ("[I]t is generally held that losses resulting from the use of a credit report solely for a business or commercial transaction

---

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

are not recoverable under the FCRA.").  The FCRA only applies to credit reports that relate to a consumer's applications for personal credit -- not to applications for credit that will be used in a business transaction.  *See Natale v. TRW, Inc*., 1999 WL 179678, **3-4 (N.D. Cal. Mar. 30, 1999) (FTC and case law hold that the FCRA does not apply to transactions related primarily to businesses operated by the consumer); *George v. Equifax Mortg. Servs.*, 2010 WL 3937308, *2 (E.D.N.Y Oct. 5, 2010); *Tilley v. Global Payments, Inc*., 603 F. Supp. 2d 1314, 1328-1329 (D. Kan. 2009); *Yeager v. TRW, Inc*., 961 F. Supp. 161, 162-63 (E.D. Tex. 1997) (holding that report that was issued in response to application for commercial credit was not "consumer report" within meaning of FCRA.)

"[T]he legislative history of the [FCRA] and the official administrative interpretation of the statutory terminology involved compel the conclusion that the [FCRA] does not extend coverage to a consumer's business transactions."  *Yeager*, 961 F. Supp. at 162.  "A report on a consumer for credit . . . in connection with a business operated by the consumer is not a consumer report and the [FCRA] does not apply to it."  *Id*.  As one court held,  granting a consumer reporting agency's motion to dismiss on this basis:  "a report on a consumer for credit or insurance in connection with a business operated by the consumer is not a consumer report, and the [FCRA] does not apply to it."  *Lucchesi v. Experian Info. Solutions, Inc.*, 226 F.R.D. 172, 174 (S.D.N.Y. 2005).

Accordingly, Plaintiff's claim for damages due to losses incurred by his business, BAB, are not actionable under the FCRA.  Plaintiff admitted that virtually all of his alleged damages in this case stemmed from denials of credit to BAB.  This is not a case in which the credit sought by Plaintiff was for both business and personal use, such as in *Dennis v. BEH-1, LLC,* 520 F.3d 1066, 1071 (9th Cir. 2008) or *Pourfard v. Equifax Info. Servs. LLC*, 2010 WL 55446, *6 (D. Or. Jan. 7, 2010).  Instead, it is undisputed here that the items listed in section IV of the Statement of Facts related solely to credit for his business, BAB, and were not for personal use at all.  It is undisputed that the increase of rent for BAB, the denial of credit by vendors for BAB, and alleged damages stemming from the alleged inability

1   of BAB to expand, are all business damages.[4]   Plaintiff's purported damages expert further admits that

2   all of her calculations are based on calculation of net lost revenue to BAB as a result of its inability to

3   expand in 2004.   (Lianos Dep., 128:24-131:13.)   Thus, contrary to *Dennis* and *Pourfard*, summary

4   judgment should issue on those alleged damages here.

5      **C.  Equifax Is Not Liable For Damages Caused By Experian**

6      Plaintiff cannot recover damages against Equifax without any evidence that Equifax's reporting

7   was the proximate cause of a credit denial or other adverse action.   *See, e.g.*, *Johnson*, 558 F. Supp. 2d

8   1132-33 ("there must be a causal connection between [the consumer reporting agency's] violation and

9   the alleged harm"); *see also Cousin v. Trans Union Corp*., 246 F.3d 359, 369 (5th Cir. 2001) (absent

10  evidence a creditor utilized defendant's credit report in denying credit, no actual damages could be

11  awarded to the consumer); *Crabill v. Trans Union, LLC*, 259 F.3d 662, 664 (7th Cir. 2001) (affirming

12  summary judgment for agency where consumer failed to provide a causal connection between alleged

13  violations of the FCRA and his purported injury).   With respect to the November 2005 mortgage loan

14  application, the May 2008 attempt to refinance his mortgage, and the BAB applications with Bank of

15  America in April 2006 and Washington Mutual in August 2008, Plaintiff cannot recover damages

16  against Equifax because those creditors did not base their credit decisions on information reported by

17  Equifax.   It is undisputed that these four companies used **Experian** credit reports and did not rely on

18  information reported by Equifax.   Equifax cannot be held responsible for alleged credit denials that are

19  based on consumer credit reports issued by another consumer reporting agency.   Since Plaintiff is unable

20  to present evidence of causation linking Equifax to these alleged credit denials, summary judgment

21  should be granted in favor of Equifax on these claims.

22

23

24

---

25  [4]   In addition, all of the alleged business damages fall outside the statute of limitations.

---

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

**D.      Plaintiff Lacks Support for Claims Under FCRA Sections 1681b and 1681g**

**1.      The Facts Do Not Support Plaintiff's FCRA § 1681b Claim**

Section 1681b enumerates the circumstances under which consumer reporting agencies may furnish or publish an individual's consumer report.  Pursuant to 15 U.S.C. § 1681b(a)(3)(A), a consumer reporting agency may furnish a consumer report to a person whom it has reason to believe "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of the consumer."  Plaintiff added a claim under this section of the FCRA in his Amended Complaint, but did not specify when or to whom Equifax issued a credit report without a permissible purpose.  The claim should be dismissed on that ground alone.  *See Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007) (a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.)  Further, Plaintiff testified that he does not know if Equifax disclosed any of his private information to any person or persons to whom he did not want it disclosed.  (Bratch Dep., 168:11-14.)  Plaintiff cannot show that Equifax made a disclosure to a person it did not have reason to believe had a statutorily authorized purpose for obtaining the report or that Equifax failed to maintain reasonable procedures to prevent improper disclosures.

**2.      The Facts Do Not Support Plaintiff's FCRA § 1681g Claim**

Section 1681g requires consumer reporting agencies to clearly and accurately disclose to the consumer, upon request, all information in the consumer's credit file, the sources of the information, the identities of certain recipients of the consumer's report, and other credit-related information outlined in the provision.  *See* 15 U.S.C. § 1681g(a).  Again, Plaintiff added this claim in the Amended Complaint, but does not specify when Equifax failed in its duty under §1681g or how.  The claim should be dismissed on that ground alone.  *See Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007) (a complaint must contain sufficient factual

1    matter, accepted as true, to state a claim for relief that is plausible on its face.)  Plaintiff states no facts to

2    support the claim whatsoever.  Plaintiff has not identified any disclosure that he failed to received from

3    Equifax, much less one that fails to clearly and accurately disclose all of the information on his file.

4    **II.    PLAINTIFF CANNOT ESTABLISH EQUIFAX WILLFULLY VIOLATED THE FCRA**

5            As noted above, the facts of this case are limited to five months, in late 2008, wherein, Equifax

6    combined and then immediately, on next contact, separated Plaintiff's file from his brother's.  On these

7    facts, Plaintiff alleges that Equifax acted willfully towards him and he seeks punitive damages under

8    Section 1681n of the FCRA.  In *Safeco Insurance Co. of Am. v. Burr*, 551 U.S. 47 (2007), the Supreme

9    Court considered the meaning of the word "willfully" in this context and concluded that the term is

10   broad enough to include both intentional and reckless violations of the law.  The Court noted that "the

11   term recklessness is not self-defining," but that, in the civil context, it is "generally understood . . . as

12   conduct violating an objective standard: action entailing 'an unjustifiably high risk of harm that is either

13   known or so obvious that it should be known.'"  *Safeco*, 551 U.S. at 68 (quoting *Farmer v. Brennan*,

14   511 U.S. 825, 836 (1994)).

15               Thus, a company subject to FCRA does not act in reckless disregard of it
16               unless the action is not only a violation under a reasonable reading of the
17               statute's terms, but shows that the company *ran a risk of violating the law
                 substantially greater than the risk associated with a reading that was
                 merely careless.*

18   *Safeco*, 551 U.S. at 69 (emphasis added).  Thus, to establish a willful violation of the FCRA, Plaintiff

19   must demonstrate that Equifax ran a risk of violating the FCRA substantially greater than mere

20   carelessness.  Although some courts have stated that willfulness must generally be determined by a jury,

21   the Supreme Court demonstrated otherwise in *Safeco*, where it held as a matter of law that the defendant

22   had not acted recklessly.  *See id.* at 71.

23           Equifax asked Plaintiff in an interrogatory to provide the basis for his claim that Equifax acted

24   willfully.  The only factual support that he could provide was that Equifax reinserted his brother's 2001

25   bankruptcy and other inaccurate information into his credit file sometime after early 2005.  (Bratch

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

Dep., Ex. 51, Response to Interrogatory No. 13.)  Plaintiff, however, has no evidence regarding the content of his Equifax credit file at any time between 2005 and July 2008, and no evidence that Equifax reinserted any information that it had previously removed from Plaintiff's file.  He testified that he does not know when the bankruptcy allegedly came back onto his credit file.  (Bratch Dep., 412:5-17.)  The only evidence on the issue is that Equifax did *not* reinsert a bankruptcy or any other previously removed information back onto Plaintiff's credit file.  (Leslie Dec., ¶ 29.)  Equifax was not reporting a bankruptcy as a public record entry on Plaintiff's file in 2004 when he allegedly discovered that his file included a bankruptcy.[5]  (*Id*. at ¶ 30.)

Further, as set forth above, Equifax employs extensive procedures to ensure the maximum possible accuracy of credit information regarding the consumers whose files it maintains.  These procedures include measures to investigate consumers' disputes regarding information reporting on their files.  The evidence in the record reflects that Equifax dutifully conducted an investigation each and every time Plaintiff made a dispute concerning information reporting on his credit file.  Further, the evidence reflects that Equifax followed its established policies and procedures in responding to Plaintiff's disputes.  Equifax trains its agents to combine files that appear to belong to the same person.  Equifax does not concede that any agent made a mistake in doing that here.  At worse, however, it was a simple mistake, not reckless disregard for the consumer.  Equifax remedied the problem on the very next occasion that Plaintiff contacted it.  Indeed, the foregoing actions do not demonstrate a reckless disregard for Plaintiff's rights but a conscious effort to protect Plaintiff's rights.  *See, e.g., Karmolinski*, 2007 WL 2492383, at * 4 ("[t]o establish a willful violation … plaintiff must show that [the agency's] failure to institute such procedures is an unreasonable interpretation of § 1681e(b) and created a substantially higher risk of violating § 1681e(b) than would a merely negligent interpretation").

---

[5]  The evidence does reflect, however, that co-defendant Experian reported a bankruptcy public record regarding Plaintiff in 2003.  (Bratch Dep., 55:21-56:22.)

III.   **PLAINTIFF'S STATE LAW CLAIMS HAVE NO MERIT**

   A.   **The FCRA Preempts Plaintiff's Defamation And WCPA Claims**

   Pursuant to 15 U.S.C. § 1681h(e), "no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency . . . except as to false information furnished with malice or willful intent to injure such consumer." A claim under the Washington Consumer Protection Act (WCPA) is also preempted per this section of the FCRA. *Dvorak v. AMC Mortgage Servs., Inc.*, 2007 WL 4207220, *5 (E.D. Wash. Nov. 26, 2007.) While "malice" is not defined by the FCRA, the Ninth Circuit has adopted a definition that the publication is made "with knowledge that it was false or with reckless disregard of whether it was false or not." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1168 (9th Cir. 2009).

   Plaintiff has offered no evidence that Equifax published inaccurate information with knowledge or reckless disregard. Again, Equifax did not reinsert a bankruptcy or any information onto Plaintiff's credit file. Equifax employs extensive procedures to ensure the maximum possible accuracy of credit information regarding the consumers whose files it maintains and it dutifully conducted an investigation each and every time Plaintiff made a dispute concerning information reporting on his credit file. At worst, Equifax made a mistake when its agent combined the files of the Bratch brothers. Equifax fixed the problem on the very next occasion that Plaintiff contacted it.

   Further, Plaintiff testified that he does not know whether any conduct by Equifax in this case was malicious or intentional. (Bratch Dep., 167:16-24.) He admits that he has no evidence that Equifax was acting intentionally toward him. (Bratch Dep., 174:7-10.) Under these circumstances, Equifax acted neither with malice nor willful intent. Accordingly, Plaintiff's state law claims for defamation and WCPA violation do not survive summary judgment.

**B.      No Prima Facia Showing To Support Defamation Or WCPA Claim**

Even if the claims were not preempted, Plaintiff cannot meet the burden of showing the essential elements to sustain them.   To prove a violation of the WCPA, a party must show: 1) an unfair or deceptive act; 2) the act occurred in the conduct of trade or commerce; 3) the act has an impact on the public interest; 4) injury to the claimant; and, 5) causation.   *Henderson v. GMAC Mortg. Corp*., 2008 WL 1733265, *7 (W.D. Wash., Apr. 10, 2008).   Plaintiff cannot satisfy the first element of a WCPA violation because no unfair or deceptive act or practice occurred.   It further flows that if there is no unfair or deceptive act, there is no impact on the public interest, injury, or causation for damage.

Under Washington law, to make out a prima facie case of defamation, a plaintiff must show falsity, an unprivileged communication, fault, and damages.   *SaleHoo Group, Ltd. v. ABC Co.*, 722 F. Supp. 2d 1210, 1218 (W.D. Wash., 2010).   Plaintiff has not shown that Equifax communicated any false information in an unprivileged communication.

This 8th day of April, 2011.

EQUIFAX INFORMATION
SERVICES LLC

**/s/Lewis P. Perling**
Lewis Perling (admitted *pro hac vice*)
King & Spalding LLP
1180 Peachtree Street
Atlanta, GA 30309
Phone: (404) 572-4600
Fax:    (404) 572-5100
Email: lperling@kslaw.com

Kevin H. Breck
Winston & Cashatt, Lawyers
Bank of America Financial Center
601 W. Riverside, Suite 1900
Spokane, WA 99201
(509) 444 3318 (direct)
(509) 838 1416 (fax)
(509) 638-8660 (cell)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day electronically filed **DEFENDANT EQUIFAX INFORMATION SERVICES MOTION FOR PARTIAL SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record in the case.

Dated: April 8, 2011.

/s/Lewis P. Perling

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S
MOTION FOR PARTIAL SUMMARY JUDGMENT