1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**The Honorable Ricardo S. Martinez**

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

**SURINDER S. BRATCH**,

       Plaintiff,

   v.

**EQUIFAX INFORMATION SERVICES LLC** and **EXPERIAN INFORMATION SOLUTIONS, INC.**

      Defendants.

Case No.  **2:09-cv-01724-RSM**

**PLAINTIFF SURINDER S. BRATCH'S MEMORANDUM IN OPPOSITION TO DEFENDANT EQUIFAX'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**NOTE ON MOTION CALENDAR: MAY 6, 2011**

**ORAL ARGUMENT REQUESTED**

     Plaintiff Surinder S. Bratch ("Plaintiff"), through his attorneys, files this Memorandum in Opposition to Equifax Information Services, LLC's Motion for Partial Summary Judgment.

## I.  INTRODUCTION

     Plaintiff has brought claims under the Fair Credit Reporting Act ("FCRA") 15 U.S.C. § 1681 *et seq.* against Equifax Information Services, LLC ("Equifax").  Plaintiff claims that Equifax failed to comply with § 1681e(b), § 1681i, § 1681b and § 1681g of the FCRA; that Equifax defamed Plaintiff; and that Equifax violated the Washington Consumer Protection Act ("WCPA").  Equifax has moved for partial summary judgment based on the statute of limitations in § 1681p; violations of § 1681b and § 1681g; all willful violations of the FCRA; violations of the WCPA; defamation; and all claims for economic damages.

     Equifax's motion should be denied.  Equifax has not shown that there are no issues of

PLAINTIFF'S MEMORANDUM IN OPPOSITION
2:09-cv-01724-RSM    PAGE 1

**SEATTLE DEBT LAW, LLC**
705 SECOND AVE, SUITE 1050
SEATTLE, WASHINGTON  98104
telephone (206) 324-6677
fax (206) 447-0115

1

2 fact and that it is entitled to judgment as a matter of law.  Rather, the undisputed facts establish

3 that Plaintiff is entitled to summary judgment on Equifax's failure to comply with § 1681i(a).

4 **II.  STANDARD FOR SUMMARY JUDGMENT**

5 Under Federal Rule of Civil Procedure 56, a party can obtain summary judgment only if

6 it shows that there is no genuine issue as to any material fact and the moving party is entitled to

7 judgment as a matter of law.  Fed.R.Civ.P. 56(c).

8 To avoid summary judgment, the opposing party need only show sufficient evidence of a

9 factual dispute to require that a judge or jury resolve the dispute at trial.  *TW Electrical Service,*

10 *Inc. v. Pacific Electrical Contractors Ass'n*, 809 F 2d 626, 630 (9th Cir. 1987).  The judge does

11 not weigh the evidence and must view the evidence in the light most favorable to the nonmoving

12 party.  *Id.*  If there is a conflict of evidence, the judge must assume the truth of the evidence set

13 forth by the nonmoving party.  *Id.* at 631. "Put another way, if a rational trier of fact might

14 resolve the issue in favor of the nonmoving party, summary judgment must be denied." *Id.*  In

15 addition, all inferences must be drawn in the light most favorable to the nonmoving party.  *Id.*

16 **III.  THE FAIR CREDIT REPORTING ACT**

17 The FCRA is a comprehensive statutory scheme governing credit reporting agencies.

18 The FCRA was the product of Congressional concern over abuses in the credit reporting

19 industry. *Guimond v. Trans Union Credit Information Co.*, 45 F 3d 1329, 1333 (9th Cir. 1995).

20 The FCRA was crafted to protect consumers from the transmission of inaccurate information

21 about them and to establish credit reporting practices that utilize accurate, relevant and current

22 information in a confidential and responsible manner.  *Guimond*, 45 F 3d at 1333.  "These

23 consumer oriented objectives support a liberal construction of the FCRA." Id.

24 **IV.  SUMMARY OF FACTS**

25 Although Plaintiff Surinder Bratch has a different name, social security number and date of

26 birth than his brother, Equifax mixed Plaintiff's credit and personal information with that of his

27 brother for several years.  *Declaration of Surinder Bratch ("Bratch Dec.")* ¶ 2.  And in July 2008,

PLAINTIFF'S MEMORANDUM IN OPPOSITION
2:09-cv-01724-RSM    PAGE 2

SEATTLE DEBT LAW, LLC
705 SECOND AVE., SUITE 1050
SEATTLE, WASHINGTON  98104
telephone (206) 324-6677
fax (206) 447-0115

when Plaintiff disputed information Equifax was reporting, Equifax literally merged Plaintiff's file and his brother's file into a single file, so they were essentially one person. *Deposition of Margaret Leslie ("Leslie Depo."), attached as Ex. L to Declaration of Robert Sola,* 24:8-24; 170:21 to 171:4.

But Plaintiff's problems with Equifax started long before July 2008. In 2004, Plaintiff received a copy of his Equifax credit report and saw that it contained his brother's bankruptcy and other information that belonged to his brother. *Bratch Dec.* ¶ 3.

Plaintiff hired attorney Ronald Gomes to assist him in getting his credit report corrected. *Id.* In 2004, Gomes contacted Equifax to request that it remove the bankruptcy. *Gomes Dec.* ¶ 3. Gomes provided Equifax with Plaintiff's social security number and his brother's social security number and told Equifax that it was the brother Sukhvinder Bratch who had filed for bankruptcy. *Id.* On April 15, Gomes obtained Plaintiff's credit report from Equifax. *Id.* ¶ 4, Ex. A. Equifax had removed the bankruptcy. Ex. A. On April 18, 2005, Gomes faxed a letter to Plaintiff stating that Equifax had removed the bankruptcy "like they told me," and enclosed the April 15, 2005 Equifax report. *Gomes Dec.* ¶ 4, Ex. A; *Bratch Dec.* ¶ 5, Ex. A.

In early July 2008, Plaintiff sent a letter to Equifax asking it to update its reporting of several accounts which he indicated had never been paid late. *Bratch Dec.* ¶ 8, Ex. B. He did not mention a bankruptcy because he was not sure that Equifax had put the bankruptcy back on his credit report when he wrote the letter. *Id.* Although Plaintiff did not know this, when Equifax notified two of the creditors about his dispute, Equifax told those creditors that he was stating the account did not belong to him rather than that he had never paid late. *Deposition of Ladeamya Mixon ("Mixon Depo."), attached as Ex. K to Declaration of Robert Sola,* 58:9-17, 59:3-25, 71:6-21.

Plaintiff did not receive a response from Equifax to his July 2008 dispute. *Bratch Dec.* ¶ 9.

In July 2008, when Equifax received Plaintiff's dispute, Equifax had a separate file for Plaintiff from that of his brother. *Leslie Depo.* 62:8-17. In response to his dispute, Equifax merged his file with his brother's file. *Leslie Depo.* 24:21-24. This caused all of his brother's credit information to be combined with his credit information. *Leslie Depo.* 25:16-24. Yet, this combined

PLAINTIFF'S MEMORANDUM IN OPPOSITION
2:09-cv-01724-RSM   PAGE 3

SEATTLE DEBT LAW, LLC
705 SECOND AVE., SUITE 1050
SEATTLE, WASHINGTON  98104
telephone (206) 324-6677
fax (206) 447-0115

file had Plaintiff's name and social security number. *Leslie Depo.* 28:11 to 29:8; 31:18 to 32:14. These two separate consumers were now one person to Equifax. *Leslie Depo.* 170:21 to 171:4.

On July 28, 2008, Plaintiff received his Equifax credit report. *Bratch Dec.* ¶ 10, Ex. C. He was very disturbed when he saw the information Equifax was reporting. Instead of his name, the report had his brother's name: Sukhwinder S. Bratch. Plaintiff now learned that Equifax was reporting the bankruptcy that it had previously removed. It also listed several other accounts that did not belong to him. *Id.* Equifax indicated that it had sent his credit report to several businesses with whom he had not sought credit or had an existing credit account. *Id.* His Equifax credit report now had more false information than he had ever seen on it before. *Id.*

Because Equifax was again reporting the bankruptcy, Plaintiff contacted the bankruptcy court in August 2008 to get proof that he had not filed for bankruptcy. *Bratch Dec.* ¶ 11. Plaintiff obtained a Certificate of Search from the bankruptcy court that indicated there were no bankruptcy cases found under his name or social security number. *Id.*, Ex. D.

Plaintiff sent the Certificate of Search to attorney William Shofstall, who was assisting him to get his credit report corrected. Plaintiff told Shofstall that Equifax was reporting the bankruptcy. *Bratch Dec.* ¶ 12. Shofstall mailed a letter to Equifax on September 10, 2008 on Plaintiff's behalf, in which he disputed the bankruptcy and other information. *Declaration of William Shofstall ("Shofstall Dec.")* ¶ 3, Ex. E; *Bratch Dec.* ¶ 12, Ex. E. Shofstall enclosed the Certificate of Search and stated that he was disputing certain entries because they are merged with close relatives of Plaintiff living at the same address. *Id.* Shofstall also enclosed copies of Plaintiff's social security card and driver's license, and copies of Plaintiff's brother's passport and social security card. *Id.*

On October 1, 2008 Plaintiff, obtained his Equifax credit report. *Bratch Dec.* ¶ 13, Ex. F. The report showed that Equifax was still reporting the bankruptcy and other information that Shofstall had disputed. *Id.* Equifax was also reporting several accounts that did not belong to Plaintiff and indicated that it had provided his credit report to companies that he was not seeking credit from and that he did not have an existing credit account with. *Id.*

PLAINTIFF'S MEMORANDUM IN OPPOSITION
2:09-cv-01724-RSM    PAGE 4

On October 8, 2008, Plaintiff called Equifax to ask if it had received the documents related to his dispute of the bankruptcy. *Mixon Depo.* 123:4 to124:7,19-22; 125:9-14.; *Bratch Dec.* ¶ 14, Ex. G. Plaintiff was referring to the Certificate of Search from the bankruptcy court indicating he had not filed for bankruptcy that had been sent by Shofstall in September 2008. *Bratch Dec.* ¶ 14. Equifax told Plaintiff that it had received the document. *Id. Mixon Depo.* 125:9-12. Because Equifax had received the Certificate of Search document, Plaintiff expected that Equifax would soon send him results indicating that the bankruptcy had been removed. *Id.* However, Plaintiff did not receive any results from Equifax regarding the disputes that Shofstall had sent in September 2008, or in response to his October 8 telephone call about his dispute of the bankruptcy. *Id.* Equifax did not make any changes to Plaintiff's credit report as a result of his October 8, 2008 telephone call. *Mixon Depo.* 136:22 to 137:4.

Having received no response to his prior disputes, Plaintiff sent Equifax another dispute letter dated October 23, 2008. *Bratch Dec.* ¶ 15, Ex. H. He disputed the bankruptcy and other inaccurate information, and enclosed documents showing the bankruptcy did not belong to him. *Id.* Plaintiff did not receive a response from Equifax to his October 23, 2008 dispute letter or any results showing that Equifax reinvestigated the disputes or made corrections to his report. *Bratch Dec.* ¶ 16.

Equifax's reporting of the bankruptcy that did not belong to Plaintiff caused him to be denied credit twice in 2008. *Bratch Dec.* ¶¶ 18,19, Ex. I.

# V. ARGUMENT

### A. THERE ARE FACTUAL ISSUES REGARDING WHEN PLAINTIFF DISCOVERED AN FCRA VIOLATION

In 2003, Congress amended the statute of limitations for FCRA claims in § 1681p to include a discovery provision. The statute provides that an action must be brought

> "not later than the earlier of (1) 2 years after the date of discovery by the Plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs." § 1681p

The previous version of § 1681p required an action be brought within two years of the violation.

**SEATTLE DEBT LAW, LLC**
705 SECOND AVE.,SUITE 1050
SEATTLE, WASHINGTON  98104
telephone (206) 324-6677
fax (206) 447-0115

1

2       The amendment adding the discovery provision and extending the period to five years

3   demonstrates that Congress recognized the vital importance of a consumer's private right of

4   action under the FCRA and wished to assure that those rights were not easily extinguished.  This

5   Congressional intent should govern the interpretation and application of the statute of limitations.

6       This action was filed on November 18, 2009.  Because of the five-year limitation in §

7   1681p, Plaintiff concedes that he cannot bring any claims for violations that occurred more than

8   five years before the case was filed, which is November 18, 2004.  The issue on summary

9   judgment is whether Equifax has met its burden to show that there is no factual issue regarding

10  whether Plaintiff discovered an FCRA violation during the time period running between five

11  years before the case was filed and two years before the case was filed. That is, between

12  November 18, 2004 and November 18, 2007.  Equifax has not met its burden.

13      Equifax bases its entire argument on its assertion that Plaintiff discovered in 2004 that a

14  bankruptcy had been reported by Equifax.  Equifax's Motion, p. 14, lines 12-13.  Yet Equifax

15  denies that it reported a bankruptcy in 2004.  Equifax's Motion, p. 14, n. 3.  Equifax cannot have

16  it both ways.  It cannot argue that it did not report a bankruptcy in 2004 but that Plaintiff's claims

17  prior to 2008 are barred because he was aware of this non-existent reporting of a bankruptcy.

18      In fact, Equifax denies it reported false information about Plaintiff prior to July 2008.

19  Plaintiff presents evidence that Equifax reported a bankruptcy in 2004 through the declaration of

20  Plaintiff.  In light of Equifax's denial of that assertion, there is a factual question as to what

21  Equifax was reporting in 2004.  Thus, there is a factual question regarding Plaintiff's discovery,

22  which requires this Court to deny summary judgment.

23      Plaintiff knew the bankruptcy was removed from his credit report by April 15, 2005.  He

24  did not suspect that it went back on his credit report until the denial from Key Bank in March

25  2008, which Key Bank indicated was because of a "public record" item. *Bratch Dec.* ¶ 7.  He

26  did not confirm that Equifax had put the bankruptcy back on his credit report until he saw the

27

SEATTLE DEBT LAW, LLC
705 SECOND AVE., SUITE 1050
SEATTLE, WASHINGTON  98104
telephone (206) 324-6677
fax (206) 447-0115

July 28, 2008 credit report. *Id.* Plaintiff filed this action on November 18, 2009, well within two years even assuming that Plaintiff discovered Equifax reinserted the bankruptcy in March 2008.

Even if Plaintiff was aware that there was inaccurate information on his credit report prior to November 18, 2007 (which Equifax denies), that does not prove that Plaintiff discovered a "violation" as required by § 1681p. Equifax attempts to argue that Plaintiff being aware of an inaccurate report is equal to him being aware of a violation for purposes of § 1681p. However, this Court has already rejected that same exact argument in *Andrews v. Equifax Information Services, LLC,* 700 F. Supp.2d 1276 (W.D. Wash. 2010).

In *Andrews*, the consumer became aware that Equifax was reporting inaccurate information in 2004 and contacted Equifax to dispute that information in 2004 and 2005. The consumer filed her case against Equifax on May 23, 2008. Equifax moved for summary judgment in regard to claims arising prior to May 23, 2006, stating that the consumer had discovered those claims "because she was then aware of the information in her file that she believed was inaccurate." *Andrews,* 700 F.Supp.2d at 1278.

The court held that knowledge of an inaccurate credit report was not sufficient to prove discovery of a violation. The court noted that the FCRA is not a strict liability statute, citing the Ninth Circuit in *Guimond. Id.* Because the FCRA is not strict liability, inaccurate information in a credit report by itself is not a violation of the FCRA. *Id.* Section 1681e(b) requires that credit reporting agencies "follow reasonable procedures to assure maximum possible accuracy of the information" in a consumer report. But, as the *Andrews* court quoted from *Guimond*: "The FCRA does not impose strict liability…an agency can escape liability if it establishes that an inaccurate report was generated despite the agency's following reasonable procedures." *Id.* The *Andrews* court noted that there are many reasons that a credit report may contain inaccurate information which would not constitute a violation of the FCRA. *Id*. at 1278-1279. "The Court thus finds the conclusion inescapable that there is a material dispute of fact as to when Plaintiff discovered the alleged violations at issue here. *See Saindon[v. Equifax Information Services],*

PLAINTIFF'S MEMORANDUM IN OPPOSITION
2:09-cv-01724-RSM   PAGE 7

608 F. Supp.2d at 1215 [N.D. Cal 2009] (discussing particular alleged violations, and leaving for the jury to decide what constituted discovery of the violation)." *Id.* at 1279.

Moreover, like the consumer in *Andrews*, Plaintiff was not aware of the procedures that Equifax used to prepare his credit reports at this time. *Bratch Dec.* ¶ 22. *See Id.*

Equifax also argues that because Plaintiff claims he suffered damages prior to 2008 that somehow proves that he was aware that Equifax had violated the FCRA. This argument was also rejected in both *Andrews* and *Saindon*. Section 1681p clearly states that an action is only barred if the consumer discovers the "violation" more than two years before the action is filed. Discovery of damages is not discovery of a "violation." The *Andrews* court stated:

> "According to Equifax, 'Plaintiff was made aware of Equifax's alleged violations of the FCRA when she received notices that BECU denied her credit application and that the denials were based on information provided by Equifax.' The Court finds this claim to be even more divorced from the language of the statute of limitations contained in § 1681p. No evidence on the record indicates that the denial of credit by a third party could alert Plaintiff to a violation of the FCRA." *Id.*

The *Andrews* court noted that the consumer did not know what information Equifax sent to BECU. *Id.* Likewise, Plaintiff did not see the information that was in the Equifax credit reports sent to the persons from whom he sought credit between April 15, 2005 and early 2008. *Bratch Dec.* ¶ 6. Further, Equifax cites Plaintiff's testimony that he did not know if the lenders used an Equifax credit report in making their decisions. Equifax's Motion, p. 10, n.1 and 2.

In *Saindon,* the court held that even if Equifax could prove the consumer learned more than two years before filing that a denial of credit was based on a false collection account reported by Equifax, the jury would still have to determine whether that knowledge "constituted discovery of the violation." *Id.* at 1215.

Congress sought to preserve a consumer's right to bring an FCRA claim by adding the discovery provision to § 1681p. Equifax has failed to meet its burden to prove that Plaintiff "discovered the violation" prior to November 18, 2007.

PLAINTIFF'S MEMORANDUM IN OPPOSITION
2:09-cv-01724-RSM   PAGE 8

1

2

   B.  THE FCRA ALLOWS PLAINTIFF TO RECOVER ALL ACTUAL DAMAGES
      RELATED TO HIS "CONSUMER REPORT".

3

4

      Equifax contends that Plaintiff cannot recover damages caused to his business, Bratch

Auto Body, even if those damages were caused by violations of the FCRA.  Equifax's argument

5

is contrary to both the language of the FCRA and binding Ninth Circuit precedent.  Equifax

6

ignores the definition of "consumer report" which is the basis for Plaintiff's claims.  The

7

damages he seeks flow primarily from Equifax's violation of § 1681e(b) which requires that

8

when Equifax "prepares a consumer report it shall follow reasonable procedures to assure

9

maximum possible accuracy of the information concerning the individual about whom the report

10

relates."

11

      In other words, Plaintiff claims that when Equifax prepared his consumer reports (also

12

known as "credit reports"), it did not follow reasonable procedures to assure maximum possible

13

accuracy of the information in those reports.  As a result, inaccurate reports were sent to

14

companies with whom he sought credit -- sometimes for his personal use and sometimes to use

15

16

for his business -- which caused these companies not to grant him credit.

17

      The key issue is whether the reports that Equifax prepared were "consumer reports" as

18

defined by the FCRA.  Section 1681a(d) defines a "consumer report" as:

19

20

21

22

23

> "any written, oral, or other communication of any information by a consumer
> reporting agency bearing on a consumer's credit worthiness, credit standing, credit
> capacity, character, general reputation, personal characteristics, or mode of living
> which is used or expected to be used or collected in whole or in part for the purpose
> of serving as a factor in establishing the consumer's eligibility for
> (1) credit or insurance to be used primarily for personal, family, or household
> purposes, or
> (2) employment purposes, or
> (3) other purposes authorized under Section 1681b of this title."

24

      Equifax's reports on Plaintiff were clearly consumer reports under this definition.  They

25

contained information bearing on Plaintiff's credit worthiness.  The information was used, or

26

expected to be used, or collected for the purpose of serving as a factor in establishing his credit.

27

Equifax points to the phrase "credit or insurance to be used primarily for personal, family or

PLAINTIFF'S MEMORANDUM IN OPPOSITION
2:09-cv-01724-RSM   PAGE 9

household purposes." But Section 1681a(d) does not state that the information must be "used" for personal, family or household purposes to constitute a consumer report. That is only one of three options. The information will also constitute a "consumer report" if it is "expected to be used" or if it is "collected" for one of these purposes.

The information in Plaintiff's Equifax credit reports was certainly collected by Equifax to be used as a factor in establishing his credit for personal, family or household purposes, regardless of the ultimate use to which it was put. Equifax does not collect credit information in second file on Plaintiff that it sends out if he is seeking credit for his business. There is no credit report for Bratch Auto Body. *Bratch Dec*. ¶ 20. All credit that Plaintiff seeks, either for himself or for his business, is based on his personal credit report. *Bratch Dec*. ¶ 20.

Equifax is a "consumer reporting agency" as defined in § 1681a(f) because it regularly engages in assembling consumer credit information "for purposes of furnishing consumer reports to third parties." Equifax cannot deny that the files it maintained on Plaintiff and the reports it prepared were reports on Plaintiff in an individual capacity and were not commercial credit reports. Equifax collected that information and expected it to be used when Plaintiff sought a personal loan, or a mortgage, or insurance on his car or any other transaction that relies on credit.

Consistent with the definition of "consumer report," the Ninth Circuit has repeatedly held that in determining if a document is a "consumer report," the court will look to whether the company that prepared the report expected it to used, or collected the information, for a permissible purpose under the FCRA. See *Hansen v. Morgan*, 582 F.2d 1214, 1218 (9th Cir. 1978) (credit report obtained during investigation of politician was "consumer report" because credit bureau supplied the information with the expectation it would be used for purposes consistent with the FCRA and because credit bureau collected the information for purposes consistent with the FCRA); *Comeaux v. Brown & Williamson Tobacco Co.,* 915 F.2d 1264, 1274 (9th Cir. 1990) (if a report is provided on reasonable expectation that it will be put to a

SEATTLE DEBT LAW, LLC
705 SECOND AVE., SUITE 1050
SEATTLE, WASHINGTON 98104
telephone (206) 324-6677
fax (206) 447-0115

permissible use under the FCRA, then it is a "consumer report" and the ultimate use to which it

is actually put is irrelevant).

The Ninth Circuit has expressly held that a person using their personal credit report to

seek credit for a business purpose can claim actual damages under the FCRA if denied such

credit.  In *Dennis v. BEH-1, LLC,* 520 F.3d 1066 (9th Cir. 2008), the Ninth Circuit held that the

trial court erred in granting summary judgment on the ground that the consumer did not have

"actual damages" under the FCRA.  The court stated:

> "Dennis testified that he hoped to start a business and that he diligently paid his
> bills on time for years so that he would have a clean credit history when he sought
> financing for the venture.  The only blemish on his credit report in April 2003 was
> the erroneously reported judgment.  According to Dennis, that was enough to cause
> several lenders to decline his applications for credit, dashing his hopes of starting a
> new business.  Dennis also claims that Experian's error caused his next landlord to
> demand that Dennis pay a greater security deposit.  In addition to those tangible
> harms, Dennis claims that Experian's inaccurate report caused him emotional
> distress, which we've held to be 'actual damages.' *See Guimond,* 45 F.3d at 1332-
> 33.
>
> "Dennis has shown that Experian's credit report was inaccurate and he has offered
> credible evidence of actual damages.  We therefore reverse the summary judgment
> for Experian." 520 F.3d at 1069.

This holding firmly refutes Equifax's argument that Plaintiff cannot recover any damages he

incurred because he had credit denials related to his business.  In *Dennis,* the consumer could not

obtain credit "when he sought financing for the [new business] venture." *Id.*  In the case at bar,

Plaintiff could not obtain financing to expand his business.  There is no legal difference.

Because the credit denials were based on Equifax "consumer reports" and Equifax was required

to follow reasonable procedures to assure maximum possible accuracy of those reports, Plaintiff

can recover those damages if he proves that Equifax did not follow such procedures.

In *Gorman v. Wolpoff & Abramson, LLP,* 584 F.3d 1147 (9th Cir. 2009), the Ninth

Circuit relied on the holding in *Dennis* regarding actual damages. 584 F.3d at 1174.  In *Pourfard*

*v. Equifax Information Services LLC,* 2010 WL 55446 (D. Oregon January 7, 2010), the court

followed *Dennis* and *Gorman*.  It rejected Equifax's contention that the consumer could not

recover damages for cancellation of an Advanta credit card because it was a business account.

> "The Ninth Circuit recently held that a denial of credit for a consumer to start a business venture was in part grounds for actual damages under the FCRA. *Dennis,* 520 F.3d at 1069; *see Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1174 (9th Cir. 2009)(citing Dennis with approval).  Following Dennis, Plaintiff may include the closure of his Advanta account as grounds for his FCRA claims." *Pourfard,* 2010 WL55446 at *6.

Equifax has cited district court opinions that take a different approach from the Ninth

Circuit and look whether the credit was sought for business rather than if there was a "consumer

report."  These holdings are based on faulty reasoning inconsistent with the FCRA. But even if

they had some merit, they cannot override the Ninth Circuit precedents that bind this Court.

The language in the FCRA adds further support to Plaintiff's position.  The definition of

"consumer report" mentions three possible uses: "(A) credit or insurance to be used primarily for

personal, family or household purposes; (B) employment purposes; or (C) any other purpose

authorized under section 604 [§ 1681b]." § 1681a(d). Equifax only mentions subpart A.

However, subpart C expressly authorizes consumer reports to be used for any purpose in §

1681b.  Section 1681b permits an agency to provide a report to a person who "has a legitimate

business need for the information … in connection with a *business transaction* that is initiated by

the consumer." § 1681b(a)(F)(i) (emphasis added). Through that language, Congress expressly

recognized and authorized the use of consumer credit reports in connection with a "business"

transaction initiated by the consumer.  An obvious example is Equifax providing Plaintiff's

report to a company with whom he is seeking credit to use in his business.

## C.   EQUIFAX HAS NOT SHOWN THAT THERE ARE NO ISSUES OF FACT AS TO WHETHER IT WILLFULLY VIOLATED THE FCRA.

To establish a "willful" violation of the FCRA, Plaintiff need only show that Equifax

acted knowingly or in *reckless disregard* of his rights under the FCRA. *Safeco Ins. Co. of Am. v.

Burr*, 551 U.S. 47, 68-69, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007).  "Reckless disregard"

means an action entailing "an unjustifiably high risk of harm that is either known or so obvious

PLAINTIFF'S MEMORANDUM IN OPPOSITION
2:09-cv-01724-RSM    PAGE 12

that it should be known." *Safeco*, 551 U.S. at 69, 127 S. Ct. at 2215.  A consumer need not prove

malice or evil motive to establish a willful violation. *Dalton v. Capital Associated Indus.*, 257

F.3d 409, 418 (4th Cir. 2001); *Bakker v. McKinnon*, 152 F.3d 1007, 1013 (8th Cir. 1998).

Thus, to prevail on its motion, Equifax must prove that there is *no* evidence from which a

jury could find that Equifax acted recklessly.  Equifax has not met its burden.  There is abundant

evidence to create a factual question.  That is particularly true considering that the evidence must

be viewed, and all inferences must be drawn, in the light most favorable to Plaintiff.

Numerous courts, including this one, have held that where there is evidence that a credit

reporting agency has violated the FCRA, or that an agency uses a system that may lead to

violations of the FCRA, it is for the jury to determine if the violations were willful.  *See Cain v.

Trans Union, LLC,* 2006 U.S. Dist. LEXIS 25146 (W.D. Wash. February 9, 2006); *Lambert v.

Beneficial Mortgage Corporation*, 2007 U.S. Dist. LEXIS 33119 (W.D. Wash. May 4, 2007).  In

this case, the evidence shows that Equifax committed multiple violations of numerous sections of

the FCRA and employed a system leading to those violations.

### 1. Equifax Violated § 1681e(b) In Failing To Follow Reasonable Procedures To Assure Maximum Possible Accuracy Of Plaintiff's Credit Reports.

The FCRA is clear: Equifax must follow reasonable procedures to assure *maximum

possible accuracy* of the information in its credit reports. § 1681e(b).  The evidence shows that

Equifax repeatedly violated § 1681e(b).  Although the FCRA is not a strict liability statute, a

consumer makes out a prima facie violation of § 1681e(b) by presenting evidence that an agency

prepared a report containing inaccurate information.  *Guimond,* 45 F.3d at 1333.  "The

reasonableness of the procedures and whether the agency followed them will be jury questions in

the overwhelming majority of cases."  *Id.*

Equifax's contention that this case is limited to a period of five months in 2008 is simply

not correct.  Plaintiff has evidence that Equifax's inaccurate reporting spanned several years.

There is the reporting of the bankruptcy in 2004.  *Bratch Dec.* ¶ 3.  There is evidence that

SEATTLE DEBT LAW, LLC
705 SECOND AVE., SUITE 1050
SEATTLE, WASHINGTON  98104
telephone (206) 324-6677
fax (206) 447-0115

Equifax reinserted the bankruptcy into Plaintiff's report on March 9, 2006. *Mixon Depo.* 76:2-11.[1]  Equifax is not even attempting to get summary judgment on Plaintiff's § 1681e(b) claim.

Although Equifax denies that it reinserted the bankruptcy, claiming it was not on Plaintiff's credit report prior to 2008, Plaintiff has presented admissible evidence from Plaintiff that the bankruptcy was on his Equifax credit report in 2004.[2]  *Bratch Dec.* ¶ 3.  Through Mr. Gomes' disputes, the bankruptcy was removed by April 15, 2005.  *Gomes Dec.* ¶¶ 3-4, Ex. A; *Bratch Dec.* ¶ 4, Ex. A.  Although the statute of limitations has run on claims arising in 2004, the dispute sent by Gomes and the deletion of the bankruptcy are important because they show that Equifax was on notice that it was mixing Plaintiff's credit information with his brother.  Accordingly, Equifax should have taken extra precaution to prevent mixing that information in the future.  Equifax did not do so, and admits that by 2008 it had merged Plaintiff's file with his brother's file.  A jury can certainly find that merging the two files after having been put on notice of the earlier mixing was reckless.

Equifax admits that in July 2008 it merged Plaintiff's file with the file of his brother. *Leslie Depo.* 24:21-24.  When one considers the circumstances in which it merged these two files, a jury can easily find this was reckless.  In July 2008, Equifax's computer system had a separate file for Plaintiff from that of his brother.  *Leslie Depo.* 62:8-17.  This made sense because they were two different people with different names, dates of birth and social security numbers.  Yet an employee took those two separate files of two different consumers and merged them into one.

What makes it even worse,, is that this was done in response to a *dispute* from Plaintiff about errors on his credit report.  Rather than correct the errors as required by § 1681i, Equifax

---

[1] Plaintiff did not discover the reinsertion until 2008. *Bratch Dec.* ¶7.

[2] Testimony about the contents of Plaintiff's credit reports is admissible because information reported by Equifax is an admission of a party opponent. That is not hearsay under FRE 801(d)(2).  In addition, the Ninth Circuit has held that a consumer can testify to the information in the consumer's credit reports because he has personal knowledge, having seen the reports, and the evidence is not hearsay because it is not offered to prove the truth of the matter asserted. *Gorman,* 584 F.3d at 1164.  Rather, as in this case, it is information the consumer says is false. *Id.*

SEATTLE DEBT LAW, LLC
705 SECOND AVE,,SUITE 1050
SEATTLE, WASHINGTON  98104
telephone (206) 324-6677
fax (206) 447-0115

created a dozen more errors. At the time of this merging, the brother's file had 13 accounts. *Leslie Depo.* 182:13-15. Combining the two files was the worst thing Equifax could do in terms of complying with its duty to assure maximum possible accuracy of Plaintiff's credit report.

Another terrible consequence of merging the two files was that when a creditor requested the brother's file it would be provided with this merged file that had Plaintiff's confidential credit and personal information in it.  *Leslie Depo.* 32:22 to 34:6.  This resulted in the wrongful disclosure of Plaintiff's information to companies dealing with his brother, in violation of § 1681b, which limits the circumstances in which Equifax can release Plaintiff's information.

Despite the terrible consequences for Plaintiff, and the FCRA violations, that resulted from merging the files, Equifax states it was done pursuant to the training and procedures provided to the employee that combined the files.  Equifax's Motion, p. 8, line 16-18.  If that is true, then it shows that Equifax has a terribly defective system that results in the files of two different consumers being combined into one, destroying the accuracy for both consumers and causing their confidential information to be sent to persons that are not entitled to receive it.

This Court has held that the maintenance of such a system is sufficient evidence to support a willful violation.  In *Cain,* this Court denied Trans Union's motion for summary judgment as to willfulness because it was an issue of fact "whether Trans Union used a system designed to assure maximum accuracy and prevent fraud." 2006 U.S. Dist. LEXIS 25146 at *19.

It is hard to imagine conduct that is more reckless, and harmful to Plaintiff, than combining these two files.  The two files pertained to two different consumers who had different names, dates of birth and social security numbers.  Equifax's own computer system had determined they should not be combined.  Although Plaintiff and his brother shared the same address, that is not unusual.  It is customary for family members, who usually have the same last name, to live at the same address.  Equifax and its agents surely know that families live together.

SEATTLE DEBT LAW, LLC
705 SECOND AVE, SUITE 1050
SEATTLE, WASHINGTON  98104
telephone (206) 324-6677
fax (206) 447-0115

1

2      Equifax claims that it has a procedure to prevent two files from being combined, by

3  adding a "Do-Not-Combine" function to the files.  Equifax's Motion, p. 5, lines 6-10.  But

4  Equifax did not put a "Do-Not-Combine" on Plaintiff's file or his brother's.  Instead, Equifax

5  combined them.  Failing to use a procedure that Equifax has to prevent combining two files is

6  additional evidence of reckless disregard of its duty to assure maximum possible accuracy.

7      Equifax continued its violations of § 1681e(b) after combining the files.  Equifax

8  prepared a credit report on July 28, 2008, that had the bankruptcy and more false information on

9  it than Plaintiff had ever seen on it before.  *Bratch Dec.* ¶ 10.  On September 3, 2008 Equifax

10  sent Plaintiff's grossly inaccurate report to FIA Card Services (a division of Bank of America),

11  causing Plaintiff to be denied credit.  *Bratch Dec.* ¶ 19, Ex. I.  Plaintiff received another Equifax

12  credit report dated October 1, 2008.  It still had numerous errors despite Plaintiff having sent

13  disputes in July and September 2008.  Plaintiff had to dispute again on October 23, 2008.

14      **2.  Equifax Violated § 1681i By Failing To Follow The Required Procedures Upon
15      Receiving Plaintiff's Disputes.**

16      Section 1681i sets forth the procedures that Equifax must follow upon receiving a dispute

17  from a consumer.  The evidence shows that Equifax repeatedly violated § 1681i.

18          a.   Violations Related To Plaintiff's July 2008 Dispute.

19      Upon receiving a dispute from a consumer, Equifax must "provide notification of the

20  dispute to any person who provided any item of information in dispute." § 1681i(a)(2)(A).  That

21  notice must "include all relevant information regarding the dispute that the agency has received

22  from the consumer."  Equifax uses a Consumer Dispute Verification form, known as a "CDV,"

23  to notify the furnisher of the consumer's dispute.

24      Equifax concedes that it received a dispute from Plaintiff on July 7, 2008 in which

25  Plaintiff disputed accounts that he said had never been paid late.  Equifax's Motion, p. 8, lines 7-

26  8.  Two of these accounts were Americas Servicing and Capital One.  *Bratch Dec.* ¶ 8, Ex. B.

27

PLAINTIFF'S MEMORANDUM IN OPPOSITION
2:09-cv-01724-RSM   PAGE 16

1

2    Equifax violated § 1681i(a)(2)(A) by not telling Americas Servicing and Capital One that

3  Plaintiff's dispute was that the account had never been paid late.  Equifax admits that the CDVs

4  sent to those two companies indicated that Plaintiff's dispute was "not his/hers provide complete

5  I.D." *Mixon Depo.* 58:9-17; 71:6-21.  Equifax admits that it used the incorrect code and did not

6  inform Americas Servicing of Plaintiff's dispute.  *Mixon Depo.* 59:3-25.  Equifax has no

7  explanation why it did not tell Americas Servicing of Plaintiff's dispute.  *Mixon Depo.* 60:1-3.

8    Informing the furnisher of the consumer's dispute is perhaps the most important part of a

9  reinvestigation.  Yet Equifax did not do it.  Not just once, but twice.  And it has no explanation

10 why.  A jury can certainly find that it was reckless of Equifax to fail to perform this fundamental

11 part of a reinvestigation. This is evidence that Equifax does not properly train its employees, that

12 it does not properly supervise them and that Equifax has no effective quality control.

13    Equifax's reinvestigation system has other deficiencies.  For example, the CDVs sent to

14 all the furnishers listed Plaintiff's name as Sukhwinder S. Bratch, which is a slight misspelling of

15 his brother's name.  *Mixon Depo.* 61:4-12.  This was done despite Plaintiff providing his actual

16 name, Surinder, with his dispute.  *Mixon Depo.* 61:13-21.

17    Equifax used the wrong name because under its system the identifying information it puts

18 on the CDV is the information on the file at the time it gets the dispute, even if the consumer

19 indicates that that identifying information should be changed.  *Mixon Depo.* 61:25 to 63:9.

20    Plaintiff's name is certainly relevant information regarding the dispute that Equifax must

21 provide to the furnisher under § 1681i(a)(2)(A).  Thus, for Plaintiff's July 2008 disputes Equifax

22 did not provide the furnisher with notice of the actual dispute and did not provide Plaintiff's

23 name.  That is two violations for just one dispute.[3]  The fact that the incorrect name was used

24 pursuant to Equifax's system is further evidence of a willful violation.  *Cain.*

25

26  _____
[3] Because Equifax does not dispute these facts, the Court can grant summary judgment to Plaintiff for these
27 violations of § 1681i(a)(2)(A).  *Dennis*, 520 F.3d at 1071 (granting summary judgment to non-moving consumer on
    claim that Experian negligently failed to conduct a reasonable reinvestigation in violation of § 1681i).

PLAINTIFF'S MEMORANDUM IN OPPOSITION
2:09-cv-01724-RSM   PAGE 17

1

2      The FCRA also requires that Equifax send written results of the reinvestigation to the

3 consumer.  § 1681i(a)(6).  Equifax did not send Plaintiff any response to his July 2008 dispute.

4 *Bratch Dec.* ¶ 9.  Even if Equifax contends that it sent results, that is a fact question for the jury.

5 If the jury finds that Equifax did not send results, that would be another violation related to the

6 July 2008 dispute, and additional evidence that Equifax acted willfully.

7              b.   Violation Related To Reinsertion Of The Bankruptcy

8      The FCRA requires that Equifax have procedures to prevent the reinsertion in a

9 consumer's file of information that was deleted.  § 1681i(a)(5)(C).  Equifax did not have such

10 procedures because the bankruptcy went back on Plaintiff's report after it was deleted in 2005.

11      The FCRA also requires that if Equifax wants to put deleted information back on a report

12 it must obtain certification from the person who furnishes the information that the information is

13 complete and accurate, and it must send notice to the consumer of the reinsertion within five

14 days.  § 1681i(a)(5)(B).  Equifax violated these requirements because it could not have obtained

15 certification from the bankruptcy court that the bankruptcy should accurately be attributed to

16 Plaintiff, and Equifax did not send Plaintiff notice of the reinsertion of the bankruptcy.

17              c.   Violations Related To The September 10, 2008 Dispute.

18      Plaintiff's attorney William Shofstall sent Equifax a dispute letter dated September 10,

19 2008 with a Certificate of Search from the bankruptcy court proving that Plaintiff had not filed

20 for bankruptcy.  *Shofstall Dec.* ¶ 3, Ex. E.  Section 1681i(a) required Equifax to reinvestigate

21 that dispute.  Equifax did not conduct *any* reinvestigation.  Although Equifax may deny that it

22 received this dispute, that is a question of fact.  If a jury finds it was received, then Equifax's

23 failure to conduct any reinvestigation is additional evidence that it acted recklessly.[4]

24

25

26      [4] Equifax denying receipt of the Shofstall dispute is contracted by Equifax's records.  Those records show that
Plaintiff called Equifax on October 8, 2008, and Equifax told Plaintiff that it had received the document regarding

27 his dispute.  *Bratch Dec.* ¶ 14, Ex. G; *Mixon Depo.* 123:4 to 124:7; 125:9-12.  This proves that Equifax received the
Shofstall dispute letter which included the Certificate of Search from the bankruptcy court because that was the only
correspondence sent to Equifax on Plaintiff's behalf between July 28, 2008 and October 8, 2008.

PLAINTIFF'S MEMORANDUM IN OPPOSITION
2:09-cv-01724-RSM    PAGE 18

d.   Plaintiff's October 8, 2008 Telephone Call.

As discussed above, Equifax's records and deposition testimony confirm that it received a telephone call from Plaintiff on October 8, 2008, and told Plaintiff that it had received the document regarding his dispute of the bankruptcy.  This establishes that Plaintiff had disputed the bankruptcy and that Equifax had received the Certificate of Search proving it was not his.  Yet Equifax admits that nothing was done to Plaintiff's credit report as a result of the October 8, 2008 telephone call.  *Mixon Depo.* 136:22-137:4.  The bankruptcy was not deleted.  There was not even a reinvestigation.  That is strong evidence of reckless disregard of Plaintiff's rights.

e.   Violations Related To Plaintiff's October 23, 2008 Dispute.

Equifax admits it received Plaintiff's October 23, 2008 dispute.  Section 1681i(a)(6) requires Equifax to send notice of the results of the reinvestigations to Plaintiff.  Equifax concedes that it did not do so.  Equifax's Motion, p. 9, lines 14-15.  Equifax contends that was because it was not sure of Plaintiff's address.  The FCRA does not include language allowing Equifax to fail to send results on the pretext that it is not sure of the address.  Rather, it states that an agency "shall provide written notice to a consumer of the results of reinvestigation…not later than five business days after the completion of the reinvestigation…. § 1681i(a)(6)(A).

Moreover, Equifax had Plaintiff's address, 10018 SE 208th Street, Kent, WA 98031.  It was on his dispute letter and it was in Equifax's file as his current address on November 6, 2008, when Equifax was doing the reinvestigations.  *Mixon Depo.* 197:24-198:11.

Moreover, Equifax *reinvestigated and altered* his file based on the October 23, 2008 letter with this address on it.  It clearly believed the letter was from Plaintiff, otherwise it would not have done so.  It makes no sense to alter the file based on Plaintiff's letter with this address but not send him the results, on which Equifax could have redacted account numbers if was concerned about disclosing confidential information.

Equifax's claim that it sent Plaintiff a copy of his credit file on January 2, 2009, almost a month after the reinvestigations were completed does not excuse its failure to comply with

PLAINTIFF'S MEMORANDUM IN OPPOSITION
2:09-cv-01724-RSM   PAGE 19

1

2   § 1681i(a)(6).  That section not only requires the consumer get notice of the reinvestigation

3   results, but also three additional notices about his rights: to get a description of the procedure

4   used to reinvestigate, to add a statement to his file and to request that Equifax send notice that

5   information has been deleted to companies that previously received his credit reports.

6   § 1681i(a)(6)(B)(iii)-(v).  Plaintiff did not receive any of these required notices.

7        Equifax also failed to complete the reinvestigation within 30 days of receiving it as

8   required by § 1681i(a)(1)(A).  Equifax admits that the dispute was received on October 27, 2008,

9   but the reinvestigation was not completed until December 9, 2008.  *Mixon Depo.* 180:1-15.

10  Equifax may contend that it had 45 days to complete the reinvestigation because Plaintiff

11  obtained a free credit report.  But there is no evidence to support that contention.  When

12  Equifax's witness was asked which credit report Equifax was claiming Plaintiff obtained free,

13  she could not identify one.  *Mixon Depo.* 182:9 to 183:9.  Despite Plaintiff's counsel's request

14  for information proving this contention, Equifax never provided it.  *Mixon Depo.* 185:14-25.

15  Moreover, Plaintiff's dispute was based on his October 1, 2008 credit report which he obtained

16  through a credit monitoring service he had purchased.  *Bratch Dec.* ¶ 15.

17        The evidence in the record is sufficient to establish at least seven violations of § 1681i.

18  That creates a factual question whether Equifax acted in reckless disregard of Plaintiff's rights.

19        Equifax contends that it did not act recklessly because it reinvestigated all of Plaintiff's

20  disputes.  Equifax's Motion, p. 20 lines 12-13.  However, the evidence shows that Equifax did

21  not reinvestigate the disputes in Shofstall's September 10, 2008 letter or Plaintiff's October 8,

22  2008 telephone call.

23        This Court need only find evidence to support one willful violation in order to deny

24  Equifax's Motion on willfulness.

25        Equifax states that in Plaintiff's interrogatory response about willfulness Plaintiff only

26  mentioned the reinsertion of inaccurate information that was deleted in 2005.  That is evidence of

27  willfulness.  However, in deciding a summary judgment motion it does not matter whether

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Plaintiff has personal knowledge that Equifax willfully failed to comply with the FCRA.  What matters is whether there is evidence from which a jury could find that Equifax willfully failed to comply with the FCRA.  Plaintiff is not an attorney and does not know the provisions in the FCRA that Equifax must follow.

### 3.  Violations Of § 1681b.

The FCRA contains strict limits on the circumstances in which a credit reporting agency can furnish a consumer's credit report.  The limit pertinent to this case provides that Equifax can only furnish a credit report: "(3) To a person which it has reason to believe (A) intends to use the information in connection with a *credit transaction involving the consumer* on whom the information is to be furnished…" § 1681b(a)(3)(A) (emphasis added).  The emphasized language demonstrates that Equifax can only provide Plaintiff's credit report in connection with a credit transaction involving *Plaintiff*, the consumer on whom the information is furnished.

Equifax violated this subsection because Equifax gave Plaintiff's report to companies to use in connection with a credit transaction that did not involve Plaintiff (but probably involved his brother).  These companies are listed on Plaintiff's credit report as having received reports from Equifax.  Plaintiff states that his reports list several companies that he was not seeking credit from and did not have an existing credit account with.  *Bratch Dec.* ¶ 10, 13.  In addition, Equifax admits that after it merged Plaintiff's file with his brother's file, companies that were requesting his brother's file would receive the merged file that included Plaintiff's credit information.  *Leslie Depo.* 32:22 to 34:6.

Equifax argues that Plaintiff testified that he does not know if Equifax disclosed any of his private information to persons to whom he did not want it disclosed, citing his deposition.  Plaintiff corrected his deposition testimony to indicate that he did not know that for sure but believed it happened.  *Bratch Dec.* ¶ 21.  In his declaration, he states that he has recently researched the inquiries and can confirm that several did not involve him.  *Bratch Dec.* ¶ 10, 13.[5]

---

[5] Equifax argues this claim should be dismissed because Equifax does not think Plaintiff alleged sufficient facts in his Amended Complaint.  Equifax Motion, p.18, lines 9-11.  Equifax chose not to file a motion to dismiss but

**SEATTLE DEBT LAW, LLC**
705 SECOND AVE., SUITE 1050
SEATTLE, WASHINGTON  98104
telephone (206) 324-6677
fax (206) 447-0115

### 4. Violations of § 1681g.

Section 1681g(a) requires that Equifax provide Plaintiff with a copy of his credit report upon request.  Plaintiff added this claim in his Amended Complaint because it did not arise until after he filed his original Complaint.  In July 2010, Plaintiff requested his credit report from Equifax on two occasions, once online and once by telephone, but Equifax did not provide him with his report.  *Bratch Dec.* ¶ 17.  Equifax indicated that his file was "blocked." *Id*.  This testimony is sufficient to support a claim for violation of § 1681g.

### 5. Summary Of Evidence On Willfulness

In *Lambert,* this Court denied a similar motion filed by a credit reporting agency.  The court held that "Plaintiff's evidence of Trans Union's repeated inaccurate reporting is sufficient to create an issue of material fact whether Trans Union's alleged conduct amounts to reckless disregard." 2007 U.S. Dist. LEXIS 33119 at *19.

In the case now before this Court, Plaintiff presents evidence of repeated inaccurate reporting, as well as evidence that Equifax merged Plaintiff's report with that of his brother, adding a substantial amount of inaccurate information, *in response to Plaintiff's dispute* of inaccurate information that already existed on his report.  Equifax also failed to reinvestigate all of Plaintiff's disputes, failed to tell the furnishers of Plaintiff's actual disputes, failed to give the furnishers Plaintiff's correct name, failed to send Plaintiff the results of the reinvestigations, reinserted a bankruptcy that was previously deleted, failed to complete reinvestigations within thirty days, provided Plaintiff's credit report to companies that were not involved in a credit transaction with Plaintiff and failed to provide Plaintiff his credit report upon request.  Moreover, Plaintiff has shown that some of these violations occurred because of a defective system employed by Equifax.  All this is more than adequate to support a jury finding that Equifax acted in reckless disregard of Plaintiff's FCRA rights.

instead filed an Answer.  This matter is before the Court on summary judgment.  Therefore, Plaintiff's claims should be dismissed only if Equifax shows there is no genuine issue of fact and it is entitled to judgment as a matter of law.  Fed. R. Civ. p. 56(c).  Equifax's argument on Plaintiff's claim under § 1681g should be rejected for the same reason.

SEATTLE DEBT LAW, LLC
705 SECOND AVE., SUITE 1050
SEATTLE, WASHINGTON  98104
telephone (206) 324-6677
fax (206) 447-0115

1

2     D.  THE STATE LAW CLAIMS SHOULD NOT BE DISMISSED.

3         As Equifax concedes, Plaintiff's state law claims will not be preempted under § 1681h(e),

4     if Plaintiff shows that Equifax furnished false information "with malice or willful intent to

5     injure" Plaintiff.  The Ninth Circuit has defined "malice" under § 1681h(e) as a publication made

6     "with knowledge that it was false or with reckless disregard of whether it was false or not."

7     *Gorman,* 584 F.3d at 1168.  As discussed in Section V. C. at pages 12-22, Plaintiff submits

8     evidence that Equifax acted in reckless disregard as to the accuracy of the information reported.

9         Equifax cites *Dvorak v. AMC Mortgage Services,* 2007 WL 4207220 (E.D. Wash. Nov.

10    26, 2007) in arguing that Plaintiff's claims are preempted.  However, the *Dvorak* case concerned

11    information provided by a furnisher.  Therefore, the Court examined preemption under

12    § 1681t(b)(1)(F) which applies to furnishers and not credit reporting agencies.

13        The elements for defamation are: (1) falsity, (2) an unprivileged communication, (3)

14    fault, and (4) damages.  *Van Hoven v. Pre-Employee.com, Inc.*, 156 Wn. App. 879, 885 (2010).

15    The evidence Plaintiff submitted on his FCRA claims is sufficient to establish these elements.

16        Equifax violated the state Fair Credit Reporting Act, when Equifax reported false

17    information to creditors that it had reason to know was false.  RCW § 19.182.  A violation of the

18    state Fair Credit Reporting Act triggers liability under the Washington Consumer Protection Act

19    ("WCPA"), RCW § 19.86.  RCW § 19.182.150.

20        The elements of a WCPA claim are: (1) an unfair or deceptive act or practice, (2)

21    occurring in trade or commerce, (3) public interest impact, (4) injury, and (5) causation.  *First

22    State Ins. Co. v. Kemper National Ins. Co.,* 94 Wn. App. 602, 608-09 (1999).  Plaintiff's

23    evidence in support of his FCRA claims establishes these elements.  In addition, Equifax's false

24    credit reporting and violations of the FCRA clearly have an impact on the public interest.  As

25    Congress found when it enacted the FCRA: "the banking system is dependent upon fair and

26    accurate credit reporting."  § 1681i(a)(1).

27

PLAINTIFF'S MEMORANDUM IN OPPOSITION
2:09-cv-01724-RSM     PAGE 23

## VI.  CONCLUSION

Equifax has failed to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law on the issues raised in its Motion.  Therefore, it is not entitled to summary judgment.  Plaintiff respectfully requests that the Court enter an Order denying Equifax's Motion.

Dated this 2nd day of May 2011.               SEATTLE DEBT LAW, LLC

                                              */s/ Christina L. Henry*
                                              Christina Latta Henry, WSBA #31273
                                              (206) 324-6677
                                              (206) 447-0115 (fax)
                                              chenry@seattledebtlaw.com

                                              Robert S. Sola, OSB # 84454 *pro hac vice*
                                              (503) 295-6880
                                              (503) 291-9172 (fax)
                                              rssola@msn.com

                                              Attorneys for Plaintiff


### CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing PLAINTIFF'S MEMORANDUM IN OPPOSITION TO EQUIFAX'S MOTION FOR PARTIAL SUMMARY JUDGMENT on the following persons by electronic delivery of full, true and correct copies through the court's **CM/ECF** system to the attorney(s) set forth above on the date set forth below:

Lewis Perling                          Kevin H. Breck
King & Spalding, LLP                    Winston and Cashatt
1180 Peachtree Street N.E.              601 W. Riverside, Suite 1900
Atlanta, GA  30309-3521                Spokane, WA 99201

Of Attorneys for Defendant Equifax Information Services LLC

Dated this 2nd day of May 2011.               */s/ Christina L. Henry*
                                              Christina Latta Henry, WSBA #31273
                                              Attorney at Law
                                              (206) 324-6677
                                              (206) 447-0115 (fax)
                                              chenry@seattledebtlaw.com
                                              Attorneys for Plaintiff

SEATTLE DEBT LAW, LLC
705 SECOND AVE.,SUITE 1050
SEATTLE, WASHINGTON  98104
telephone (206) 324-6677
fax (206) 447-0115