Kevin H. Breck, WSBA #39183
Winston & Cashatt, Lawyers
Bank of America Financial Center
601 W. Riverside, Suite 1900
Spokane, WA 99201
(509) 838 1416 (fax)
(509) 838 6131
Email: khb@winstoncashatt.com

Lewis Perling (admitted *pro hac vice*)
King & Spalding LLP
1180 Peachtree Street
Atlanta, GA 30309
Phone:  (404) 572-4600
Fax:     (404) 572-5100
Email: lperling@kslaw.com

HON. RICARDO S. MARTINEZ

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| SURINDER S. BRATCH,<br><br>           Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES LLC, and EXPERIAN INFORMATION SOLUTIONS, INC., | Case Number:  2:09-cv-01724-RSM<br><br>**DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Defendant Equifax Information Services LLC ("Equifax") submits this reply brief in further support of its Motion For Partial Summary Judgment (Doc. 54).  The motion should be granted.

**<u>INTRODUCTION</u>**

Plaintiff's response brief contains misrepresentations regarding the available evidence, attempts to create questions of fact based on unsupported assumptions and speculation, and improperly relies on allegations not previously made.  Contrary to Plaintiff's obfuscation of the issues, this case boils down to a single error made by Equifax in July 2008, which was corrected in December

---

DEFENDANT EQUIFAX'S REPLY IN FURTHER SUPPORT OF
ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

1

of that year. The error involved combining the consumer files of Plaintiff and his brother, who have almost identical identifying information – the same middle and last names, very similar first names (Surinder and Sukhvinder), Social Security numbers that differ by only a single digit, and the same home address. When faced with such striking similarities, Equifax's combination of the two files does not reflect willfulness or recklessness.

Plaintiff claims that the brothers' files have "been mixed for several years," but the undisputed facts show that in 2004, Plaintiff's credit file included two inaccurate accounts, which were quickly corrected, and that mixing did not reoccur until July 2008, when Plaintiff disputed accurate late-payment information with respect to several of his own accounts. Despite Plaintiff's futile attempt to inflate the facts, he has abandoned his exorbitant claim of over $400,000 in economic damages allegedly caused by Equifax. He now claims that Equifax's alleged errors resulted in only two 2008 credit denials, both of which concerned his business, Bratch Auto Body & Repair, Inc. ("BAB"), and neither of which he can prove resulted from information supplied by Equifax.

## ARGUMENT AND CITATION OF AUTHORITY

**I.    ALLEGED FCRA VIOLATIONS AND DAMAGES PREDATING NOVEMBER 18, 2004 ARE ABSOLUTELY BARRED BY THE FCRA'S STATUTE OF LIMITATIONS.**

Plaintiff devotes much of his brief to his argument that factual disputes are present as to when he discovered the alleged FCRA violations. (*See* Doc. 58 at 5:21-8:26.) His argument is misleading and largely superfluous because, in addition to the FCRA's two-year statute of limitations, which is subject to the discovery rule, it also includes a statute of repose that bars all claims brought more than "5 years after the date on which the violation" occurred regardless of discover. 15 U.S.C. § 1681p. Plaintiff filed this action on November 18, 2009; thus, alleged violations that occurred prior to November 18, 2004 are barred by the statute of repose.

Plaintiff alleges that information associated with his brother's bankruptcy entered his Equifax credit file no later than September 2004, at which time he hired attorney Ronald Gomes to contact Equifax on his behalf. (*See* Doc. 60, Bratch Decl. ¶¶ 3-4; *see also* Doc. 62, Gomes Decl. ¶ 3.) Plaintiff admits that, by April 2005, accounts relates to his brother's bankruptcy had been removed from his credit file. (Doc. 58 at 6:23; Plf. Dep. at 400:23-401:20.) Equifax's business records, which

Plaintiff does not dispute, show that the accounts were in fact removed no later than January 2005. (*See* Doc. 55-2, Leslie Decl. ¶ 26.)

Section 1681e(b) of the FCRA requires credit reporting agencies, when preparing a "consumer report," to "follow reasonable procedures to assure maximum possible accuracy" of the included information. Accordingly, Plaintiff's claim that Equifax violated § 1681e(b) in 2004 is time barred because the alleged violation – inclusion of his brother's information in his credit file – occurred no later than September 2004. Section 1681i(a)(1)(A) requires consumer reporting agencies, upon receipt of a consumer dispute, to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate" and to complete the reinvestigation within 30 days. Accordingly, Plaintiff's claim that Equifax violated § 1681i(a) with respect to its handling of the alleged Gomes dispute in September 2004, is likewise barred because the alleged violation – failure to complete a proper reinvestigation within 30 days – occurred no later than October 2004, 30 days after the dispute. As Plaintiff concedes, "he cannot bring any claims for violations that occurred more than five years before the case was filed, which is November 18, 2004." (Doc. 58 at 6:7-8.)

Plaintiff obscures matters by incorrectly defining the issue as "whether Equifax has met its burden to show that there is no factual issue regarding whether Plaintiff discovered an FCRA violation during the time period running between five years before the case was filed and two years before the case was filed. That is, between November 18, 2004 and November 18, 2007." (Doc. 58 at 6:9-11.) The record, however, does not support a finding that *any* FCRA violations occurred during this time period, nor does Plaintiff make such an allegation in this portion of his brief.[1] In short, no violations were available for Plaintiff to discover, making his entire argument superfluous.

---

[1] Elsewhere, Plaintiff asserts that "Equifax reinserted the bankruptcy into Plaintiff's report on March 9, 2006." (Doc. 58 at 13:27-14:2.) Frozen scans from February and April 2006, however, show that no bankruptcy was in his file at the time. (Suppl. Leslie Decl. ¶ 6.) The only reason that a 2006 reference to the brother's bankruptcy appears in the 2008 disclosure referenced by Plaintiff's counsel is that the combined credit file contained the brother's credit-file information from prior years. (*Id.* ¶ 8.) Thus, while Equifax representative Ms. Mixon confirmed at her deposition that the July 29, 2008 credit file showed a bankruptcy and that it contained a reported date of March 9, 2006, that in no way demonstrates that the bankruptcy appeared in Plaintiff's separate credit file in March 2006, or at any time preceding the July 2008 merger. (*See id.*)

Plaintiff also argues that Equifax made inconsistent statements regarding his 2004 credit file and "cannot have it both ways." (*See* Doc. 58 at 6:13-22.) Specifically, Plaintiff claims that Equifax stated both that Plaintiff discovered the bankruptcy on his credit file in 2004 and that Plaintiff's credit file did not contain a bankruptcy. (*Id.*, citing Doc. 54 at 14:12-13 & n.3.) This misstates Equifax's position. In fact, Equifax's business records demonstrate that, although a bankruptcy did not appear in the "public records" section of Plaintiff's 2004 credit file, two accounts were listed as "included in bankruptcy." (Leslie Decl. ¶¶ 25-27.) The parties do not dispute that Plaintiff's 2004 credit file included information related to his brother's bankruptcy; the dispute (if any) relates solely to the form in which that information appeared.

## II. PLAINTIFF CANNOT ESTABLISH THAT DENIALS OF BUSINESS CREDIT IN 2008 RESULTED FROM INACCURATE INFORMATION SUPPLIED BY EQUIFAX.

### A. No evidence demonstrates that Equifax supplied Key Bank with inaccurate information in March 2008.

Plaintiff insinuates that Equifax may have reinserted information regarding his brother's bankruptcy sometime before July 2008 by stating that "[h]e did not suspect that [the bankruptcy information] went back on his credit report until the denial from Key Bank in March 2008, which Key Bank indicated was because of a 'public record' item." (Doc. 58 at 6:23-25.) The only evidence Plaintiff offered to support this indication, however, is pure hearsay consisting of Plaintiff's statements regarding what a Key Bank employee told him and an unauthenticated "Business Service Center Worksheet" that he allegedly received from Key Bank. (Plf. Dep., Ex. 38.) Moreover, the unauthenticated Key Bank document, even if accepted as true, does not demonstrate that Key Bank denied a business loan to BAB "because of a 'public record' item" on Plaintiff's Equifax credit report. The document lists the following reasons for denial of BAB's business-loan application: "Excessive Number of Delinquencies *and/or* Public Records"; "Business rating below industry norm"; "Credit rating of guarantor deemed unsatisfactory"; and "Insufficient time as current owner." (*Id.*, emphasis added.) The document includes "Public Records" as one of two possibilities within one of four reasons for denial of the loan application. In addition, the reasons given for denial imply that Key Bank also considered a *business* credit report regarding BAB when it made its decision, which are not

DEFENDANT EQUIFAX'S REPLY IN FURTHER SUPPORT OF
ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

4

covered by the FCRA.[2] *See* 15 U.S.C. § 1681a(d)(1).

Moreover, the document does not state that Key Bank obtained a credit report from Equifax. Plaintiff initially testified that he believed Key Bank had obtained credit reports from both Equifax and Experian Information Solutions. (Doc. 55-5, Plf. Dep. at 338:7-16.) Subsequently, he testified that he had not seen the credit report(s) Key Bank used and could not recall their source. (Doc. 56-1, Plf. Dep. at 475:15-25.) Plaintiff's "tri-merge" credit report from May 2008, however, indicates that Key Bank in fact obtained credit reports from both Experian and Equifax and that *the bankruptcy appeared solely on the Experian report*. (*See id*. 482:6-484:12 & Ex. 62.) Equifax's business records likewise affirm that no bankruptcy information reappeared in Plaintiff's credit file until July 2008. (*See* Leslie Decl. ¶¶ 24-29; Suppl. Leslie Decl. ¶¶ 5-6, 8.)

In short, Plaintiff has no evidence – admissible or otherwise – that any information regarding his brother's bankruptcy was reinserted into his Equifax credit file before July 2008, or that Equifax provided Key Bank with any inaccurate information regarding Plaintiff. On the other hand, Equifax has produced evidence demonstrating that Plaintiff's credit file was clear until July 2008. Based on this record, no reasonable juror could find that Equifax played any improper role in Key Bank's decision to deny BAB's March 2008 business-loan application.

**B. No admissible evidence supports a finding that Equifax supplied BOA with a credit report in September 2008.**

Even though the files of Plaintiff and his brother were merged in July 2008, which is prior to Bank of America's ("BOA's") credit denial in September 2008, Plaintiff still cannot meet his burden to show that Equifax caused that denial. First, as with Key Bank, Plaintiff bases his claim on a unauthenticated hearsay document. No evidence from BOA authenticating the document is in the record. Further, even if admissible, the document does not show that BOA denied BAB's loan application based on inaccurate information supplied by Equifax. Absent that, Plaintiff has failed to support this claim and it should be denied.

**C. Neither alleged denial is recoverable as both are business damages.**

---

[2] Contrary to Plaintiff's unsupported assertion that "no credit report for Bratch Auto Body" exists (Doc. 58 at 10:9-10), Equifax has a business credit file for BAB. (Leslie Suppl. Decl. ¶ 9.)

Even if Plaintiff could prove that Equifax reported inaccurate information to Key Bank or BOA, he does not dispute that BAB applied for credit, not Plaintiff. Moreover, BAB applied for credit to be used *solely* for business purposes, not for both personal and business purposes.

### 1. Courts have overwhelmingly held that when the use of credit is for business, the damages are not recoverable under the FCRA.

Where an individual's credit information is supplied solely for business purposes, courts – including some in the Ninth Circuit – have determined that the credit report does not fall within the realm of the FCRA, which was implemented to protect consumers, not businesses. *See, e.g., Johnson v. Wells Fargo Home Mortg., Inc.,* 558 F. Supp. 2d 1114, 1122 (D. Nev. 2008) (FCRA does not provide for damages resulting from an attempt to secure credit for business purposes.); *Natale v. TRW, Inc.,* 1999 WL 179678, at *3 (N.D. Cal. Mar. 30, 1999) (FCRA claim to "recover damages related primarily to his business" not allowed); *Mathews v. Worthen & Trust Co.,* 741 F.2d 217, 219 (8th Cir. 1984) (finding transaction exempt from FCRA because credit report was used solely for a commercial purpose); *Stich v. BAC Home Loans Servicing, LP*, 2011 WL 1135456, *4 (D. Col. Mar. 29, 2011) (individual's credit report used to obtain business credit, as opposed to personal, not within the realm of FCRA); *George v. Equifax Mortg. Servs.*, 2010 WL 3937308, *2 (E.D.N.Y Oct. 5, 2010) ("It is well established that the FCRA does not apply to business or commercial transactions, even when a consumer's credit reports impact such transactions."); *Tilley v. Global Payments, Inc.,* 603 F. Supp. 2d 1314, 1328 (D. Kan. 2009) (businesses not recoverable under the FCRA); *Lucchesi v. Experian Info. Solutions, Inc.,* 226 F.R.D. 172, 174 (S.D.N.Y. 2005) (consumer report generated for purposes of obtaining financing for the individual's business not a "consumer report" under the FCRA); *Yeager v. TRW, Inc*., 961 F. Supp. 161, 162-63 (E.D. Tex. 1997) (report issued in response to application for commercial credit not a "consumer report" under the FCRA.); *Podell v. Citicorp Diners Club, Inc.,* 914 F.Supp. 1025, 1036 (S.D.N.Y. 1996) ("The loss of plaintiff's opportunity to participate in a real estate enterprise due to adverse information included in a furnished credit report is not the sort of loss cognizable under the FCRA.").

A report about a consumer pertaining to credit in connection with a business operated by that consumer is not a consumer report. *Vandyke v. Northern Leasing System, Inc.*, 2009 WL 3320464, *4 (E.D. Cal. Oct. 14, 2009). Plaintiff's argument to the contrary ignores the Congressional Record,

which states that the purpose of the FCRA "is to protect consumers from inaccurate or arbitrary information in a consumer report . . . . *It does not apply to reports used for business, commercial, or professional purposes.*"  116 Cong. Record 36, 572 (1970) (emphasis added); *see also* 15 U.S.C. § 1681a(d)(1)(A) (purpose of FCRA is to protect consumers applying for "credit or insurance to be used primarily for personal, family, or household purposes").  The FTC has also concluded that "[a] report on a consumer for credit or insurance in connection with a business operated by the consumer is not a consumer report and the Act does not apply to it."  55 Fed.Reg. 18811, 18814 (1990).  Plaintiff's claim for damages due to losses incurred by BAB are not actionable under the FCRA.

### 2. *Dennis* and *Pourfard* are distinguishable.

Plaintiff relies primarily on two cases, *Dennis* and *Pourfard*, to argue that he should be able to recover damages sustained by his business, BAB.[3]  Both, however, are distinguishable.  In *Dennis v. BEH-1, LLC,* 520 F.3d 1066, 1068 (9th Cir. 2008), the plaintiff sued a consumer reporting agency for FCRA violations in preparing a credit report that included an inaccurate judgment.  The district court, in a "terse order stating no reasons," granted summary judgment and the Court of Appeals reversed on the plaintiff's claims for violation of §§ 1681e(b) and 1681i(a).  *Dennis*, 520 F.3d at 1071.  The district court awarded summary judgment because the Plaintiff did not offer evidence of actual damages.  *Id*., 1069.  The Court of Appeals held that there was credible evidence of actual damages, which included emotional distress, higher security deposit demanded by a landlord, and denial of applications of credit for Plaintiff to start a business.  *Id*.  Plaintiff did not have an ongoing business that sought credit, but instead was personally applying to finance a venture.  *Id*.  The Court did not examine whether any particular report was a "consumer report" as defined by the FCRA or whether business damages are recoverable under the FCRA.  Thus, to say that *Dennis* holds that business damages are recoverable under the FCRA is a stretch.  It is clear, however, that the Plaintiff in that case was personally applying for credit, as opposed to here where BAB applied for credit.

In *Pourfard v. Equifax Info. Servs. LLC*, 2010 WL 55446 (D. Or. Jan. 7, 2010), the Plaintiff sued a consumer reporting agency for violations of the FCRA related to the reporting of a disputed

---

[3] Plaintiff also cites to *Gorman v. Wolfpoff & Abramson, LLP*, 584 F.3d 1147, 1174 (9th Cir. 2009), which relies on *Dennis*, but does not address the business-damages issue.

collection account. Defendant moved for summary judgment on various grounds, including that the cancellation of a credit account did not constitute damages under the FCRA because it was a business credit account. *Id.*, \*6. The Plaintiff, however, responded to the Motion for Summary Judgment stating that the account was used for both personal and business purposes and that he was personally liable for the purchases. *Id*. The Court found a genuine issue of fact as to whether Plaintiff suffered economic loss. *Id*. Here, Plaintiff admitted that both of the alleged denials, Key Bank and BOA, relate solely to credit for BAB. (Plf. Dep. at 115:1-116:9, 118:9-119:12, 338:5-9, 339:14-341:20, 467:23-469:4; 472:21-473:2, 517:25-518:18.) It was, in fact, BAB that applied for the credit, not Plaintiff. (*Id*.) Thus, contrary to *Dennis* and *Pourfard*, where the consumers were personally applying for credit, or the account at issue was to be used for both personal and business purposes, summary judgment should issue on Plaintiff's alleged business damages.

**D.   Plaintiff lacks support for claims under FCRA §§ 1681b and 1681g.**

**1.   The Facts Do Not Support Plaintiff's § 1681b Claim.**

In Plaintiff's amended complaint, filed on March 2, 2011, he raised for the first time a claim under § 1681b, which enumerates the circumstances under which consumer reporting agencies may furnish information from a consumer's credit file, *see* 15 U.S.C. § 1681b(a)(3)(A). He did not, however, specify when or to whom Equifax had issued a credit report without a permissible purpose. (*See* Doc. 50 ¶¶ 11, 18.) In his response brief, Plaintiff alleges – for the first time – that "Equifax violated this subsection because Equifax gave Plaintiff's report to companies to use in connection with a credit transaction that did not involve Plaintiff (but probably involved his brother)." (Doc. 58 at 21:14-16.) Putting aside the fact that Equifax had no prior notice of this claim, it is nonetheless meritless because the facts do not support a finding that Equifax provided Plaintiff's credit report to any entities other than those with which Plaintiff was doing business.

Plaintiff identifies several "inquiries" listed on his July 28, 2008 credit-file disclosure made by creditors with which he denies doing business. (Doc. 60, Plf. Decl. ¶ 10 & Ex. C.)[4] As the disclosure

---

[4] Specifically, the disputed inquiries were made by: American Express/SEIMS – August 9, 2006; Associated Credit Systems – April 26 and September 6, 2007; CIS Information Services – August 1, 2006; Landsafe Credit – April 9, 2007; Nationwide Funding LLC – August 2, 2007; and Yellow Book USA – April 18, 2007. (Doc. 60-4, Plf. Decl., Ex. C at 24-26.)

demonstrates, however, all of the inquiries were made *before* the file merger and thus did not result in release of any information regarding Plaintiff. (*See* Suppl. Leslie Decl. ¶¶ 3-4.)

### 2. The Facts Do Not Support Plaintiff's § 1681g Claim.

Plaintiff's amended complaint also includes a claim under § 1681g, which requires consumer reporting agencies to clearly and accurately disclose to the consumer, upon request, all information in the consumer's credit file, the sources of the information, the identities of certain recipients of the consumer's report, and other credit-related information outlined in the provision. *See* 15 U.S.C. § 1681g(a). Plaintiff added this claim but did not specify when Equifax allegedly failed to supply Plaintiff with his credit file. (*See* Doc. 50 ¶¶ 12, 18.) In his response to Equifax's motion for partial summary judgment, Plaintiff alleges for the first time that he tried to obtain a credit-file disclosure in July 2010, after he had filed this lawsuit. (Doc. 58 at 22:1-8.) He states that he requested his credit file from Equifax on two occasions in July 2010, once online and once by telephone, but that the file had been "blocked" by Equifax. (*Id.*)

Equifax objects to this claim because it has had no opportunity to investigate Plaintiff's factual assertions, made for the first time in his response to Equifax's motion. Plaintiff certainly knew of these alleged facts in July 2010, yet he failed to file an amended complaint until March 2, 2011 and, more importantly, never updated his responses to Equifax's interrogatories to reflect the new basis for his claim. Parties are required to supplement their interrogatory responses "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). For this reason, Plaintiff's eleventh-hour claim should be rejected.

### III. PLAINTIFF CANNOT ESTABLISH A WILLFUL VIOLATION OF THE FCRA.

The FCRA permits an award of punitive damages only if a consumer reporting agency "willfully fails to comply with any requirement" imposed by the Act. 15 U.S.C. § 1681n(a)(2). Willful misconduct encompasses both intentional and reckless violations of the law. *Safeco Ins. Co.*

*of Am. v. Burr*, 551 U.S. 47, 68-69 (2007). Reckless misconduct is "conduct violating an objective standard: action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Safeco*, 551 U.S. at 68 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). Plaintiff must establish that Equifax's alleged violation of the law was "not only a violation under a reasonable reading of the statute's terms, but . . . ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id*. at 69. Plaintiff cannot carry that heavy burden here.

### A. Plaintiff may not rely on actions taken by Equifax outside the statute of limitations to establish willfulness.

Plaintiff claims that he "has evidence that Equifax's inaccurate reporting spanned several years" beginning with "the reporting of the bankruptcy in 2004" and that this demonstrates willfulness. (Doc. 58 at 13:25-27.) As discussed above, the evidence does not support a finding that the alleged FCRA violations spanned several years. Moreover, Plaintiff cannot boot strap his willfulness claim by reaching back to 2004 to rely on claims barred by the statute of limitations. The alleged 2004 violations are both time barred and are essentially unconnected to the alleged 2008 violations, which occurred years later.

According to Plaintiff, "the dispute sent by Gomes and the deletion of the bankruptcy [in 2004] are important because they show that Equifax was on notice that it was mixing Plaintiff's credit information with his brother" and that it "should have taken extra precaution to prevent mixing that information in the future." (Doc. 58 at 14:8-12; *see also id*. 16:2-6, 18:7-16.) If Equifax should have taken precautions, however, those precautions would have to have been taken in 2004, when Equifax was allegedly notified of the problem. Thus, Equifax's alleged failure to use extra precautions cannot provide a basis for a willfulness claim.

### B. Many of the alleged FCRA violations are unsupported by the evidence and/or are improperly raised and, for this reason, cannot establish willfulness.

Plaintiff raises several minor claims, some for the first time in his response to Equifax's motion for partial summary judgment, that are not supported by the evidence and/or are not properly before the Court. First, Plaintiff alleges a number of errors related to his dispute letter sent to Equifax in July 2008. (*See* Doc. 58 at 16:18-18:6.) Equifax acknowledges that it did not correctly describe

the nature of Plaintiff's disputes in the ACDVs it sent to two creditors in response to Plaintiff's July 2008 dispute letter. (Mixon Supp. Decl. ¶¶ 3-5.) The fact of the matter is, however, that the error resulted in no harm to Plaintiff. Even though Plaintiff disputed the payment history, where as the ACDVs described the accounts as "not his," the creditors verified the payment history as well as the identifying information on the accounts. (Mixon Supp. Decl. ¶ 6.) Consequently, Equifax complied with Plaintiff's request to investigate the payment history on the two accounts in its July 2008 reinvestigation. (Mixon Supp. Decl. ¶ 7.) Furthermore, Plaintiff admitted that at least one of the two disputed accounts was in fact accurate (Plf. Dep. at 483:14-17), which eliminates all new and old claims regarding reinvestigation of that account. *See Guimond v. Trans Union Credit Info. Co.,* 45 F.3d 1329, 1333 (9th Cir. 1995).

Plaintiff's assertion that Equifax erred when it failed to investigate in response to his October 8, 2008 telephone call to Equifax is also meritless. (Doc. 58 at 19:2-9.) As Equifax explained in its deposition, and now again by supplemental declaration, Plaintiff's October 8, 2008 telephone call was not a dispute of information on his credit file. (Doc. 61, Ex. K, Mixon Dep., 124:8-18; Mixon Supp. Dec., 11.) Plaintiff called to check the status of his previous dispute; Equifax therefore treated the call as a consumer inquiry and answered Plaintiff's questions. (Doc. 61, Ex. K, Mixon Dep., 124:8-18; Mixon Supp. Dec., 12.)

Finally, for reasons discussed above, Plaintiff's claims related to the alleged improper release of information in response to inquiries, the credit report allegedly sent to BOA, and his attempt to obtain a credit-file disclosure in July 2010 are meritless and/or procedural barred due to Plaintiff's failure to raise the claims in a timely manner.

In short, Plaintiff's litany of alleged violations of the FCRA boils down to a few allegations associated with the merger of his credit file with brother's in 2008. Furthermore, even if the alleged minor FCRA violations Plaintiff now asserts were supported, they do not add up to willfulness.

    **C.    Equifax's handling of the 2008 disputes was not reckless.**

Plaintiff alleges that, in September 2008, attorney William Shofstall mailed a dispute letter to Equifax on Plaintiff's behalf, but that Equifax willfully failed to respond. (*See* Doc. 58 at 18:17-23.) Equifax has no record of receiving a letter from Mr. Shofstall. (Doc. 55, Mixon Decl. ¶ 23.) More

importantly, Plaintiff has no evidence that Equifax's mailroom procedures are generally ineffective, or that Equifax willfully mishandled the Shofstall letter in particular. A single lost letter does not amount to a willful violation of the FCRA, even when combined with the other alleged errors.

Plaintiff makes two arguments regarding the October 2008 dispute. First, he claims that Equifax willfully violated the FCRA by declining to send Plaintiff's post-investigation credit-file disclosure to him before verifying Plaintiff's address. (*See* Doc. 58 at 19:10-20:6.) The FCRA instructs consumer reporting agencies to require consumers to "furnish proper identification" before providing a disclosure. 15 U.S.C. § 1681h(a)(1). This protects consumer privacy by reducing the possibility of release of consumer financial data to anyone other than the consumer. Given that the address Plaintiff supplied with his October 2008 letter did not match the address in Equifax's credit file at that time, no reasonable juror could conclude that Equifax's request for a simple identity verification constituted a willful violation of the FCRA.

Finally, Equifax's belief that it had 45 days to resolve the October 2008 dispute (instead of 30), even if incorrect, was not reckless and resulted in no harm to Plaintiff.

### D.  Merger Of Files Due To Human Error Was Not Reckless.

Plaintiff mischaracterizes and inflates the evidence in his discussion of Equifax's actions leading to the merger of the two credit files. (*See* Doc. 58 at 14:15-15:4, 15:10-26.) This is not a case, as Plaintiff implies, involving two typical family members sharing an address. Plaintiff and his brother, who were both adults at the time, have almost identical identifying information – they share the same middle and last names, have very similar first names, and have Social Security numbers that differ by only a single digit. Under these circumstances, the error made by Equifax's customer-service representative could not possibly be construed as a risk "substantially greater than the risk associated with . . . mere[ ] careless[ness]." *Safeco*, 551 U.S. at 69.

### CONCLUSION

Equifax's motion should be granted, and this Court should dismiss all claims against Equifax involving conduct predating July 2008, alleged willfulness, economic damages, and alleged violations of sections 1681b and 1681g of the FCRA.

1  This 6<sup>h</sup> day of May, 2011.

EQUIFAX INFORMATION
SERVICES LLC

**/s/Lewis P. Perling**
Lewis Perling (admitted *pro hac vice*)
King & Spalding LLP
1180 Peachtree Street
Atlanta, GA 30309
Phone: (404) 572-4600
Fax:    (404) 572-5100
Email: lperling@kslaw.com

Kevin H. Breck
Winston & Cashatt, Lawyers
Bank of America Financial Center
601 W. Riverside, Suite 1900
Spokane, WA 99201
(509) 444 3318 (direct)
(509) 838 1416 (fax)
(509) 638-8660 (cell)

---

DEFENDANT EQUIFAX'S REPLY IN FURTHER SUPPORT OF
ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

## CERTIFICATE OF SERVICE

I hereby certify that on this day electronically filed **DEFENDANT EQUIFAX INFORMATION SERVICES REPLY IN FURTHER SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system, which will automatically send email notification of such filing to the attorneys of record in the case.

Dated: May 6, 2011.

/s/Lewis P. Perling