UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SURINDER S. BRATCH,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>EQUIFAX INFORMATION SERVICES LLC, and EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>　　　　　Defendants. | CASE NO. C09-1724 RSM<br><br>ORDER GRANTING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

## I. INTRODUCTION

The matter comes before the Court on Motion for Partial Summary Judgment (Dkt. #54) brought by Defendant Equifax Information Services, LLC ("Defendant").  Plaintiff Surinder Bratch ("Plaintiff") has brought claims under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, alleging willful and/or negligent violations of §§ 1681b, 1681e, 1681g, and 1681i. Plaintiff has also brought claims for violations under the Washington Consumer Protection Act ("WCPA"), RCW 19.86, and for defamation.  Plaintiff is seeking actual damages, compensatory

damages, statutory damages, punitive damages, and attorney fees and costs. Defendant has moved for summary judgment on all claims except for negligent violations of §§ 1681e and 1681i of the FCRA, and for non-economic damages sustained during a limited time.

## II. BACKGROUND

Plaintiff has brought numerous claims under the FCRA as a result of derogatory items that are alleged to have been mistakenly placed on his credit report by Defendant. "The FCRA was the product of congressional concern over abuses in the credit reporting industry." *Guimond v. Trans Union Credit Info., Co.*, 45 F.3d 1329, 1333 (9th Cir.1995). As such, the FCRA is meant to recognize the care with which a person's credit report must be handled because of the potentially profound impact a credit report can have.

This suit arises out of Plaintiff's July 2008 communication with Defendant, in which Plaintiff sought to dispute derogatory items in his credit report. Subsequent to the July 2008 communication, one of Defendant's agents mistakenly combined Plaintiff's credit file with that of his brother. The mistaken combination of the file occurred because Plaintiff and his brother share certain similar identifying information including similar names and similar social security numbers, which led the agent to conclude that they were the same person. Defendant points out that its agents are trained to identify two credit files that appear to belong to one person and combine them in the dispute resolution process. Defendant separated the files in December of 2008. However, during the time the files were combined, Plaintiff's brother's bankruptcy was reflected on Plaintiff's credit report, thereby allegedly causing Plaintiff to suffer the effects of a tarnished credit report. Plaintiff also makes claims for alleged damage to his corporation, Bratch Auto Body.

In addition, Plaintiff claims that inaccuracies were reflected on his report during an earlier period. Plaintiff contends that Defendant inaccurately reported a bankruptcy on his credit report in 2004, which was removed in 2005. Defendant disputes the accuracy of this claim and further argues that it is barred by the statute of limitations.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. FRCP 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The Court must draw all reasonable inferences in favor of the non-moving party. See *F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds*, 512 U.S. 79 (1994). In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing O'Melveny & Meyers, 969 F.2d at 747). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248.

### IV. DISCUSSION

**A. Statute of Limitations**

The statute of limitations imposed by § 1681p of the FCRA provides that an action must be brought:

> [N]ot later than the earlier of (1) 2 years after the date of discovery by the Plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs.

1   The present action was filed on December 3, 2009.  Plaintiff concedes that any claims for

2   violations that occurred more than five years before the case was filed are barred.  Thus any

3   claims for violations that occurred prior to December 3, 2004 are time-barred.

4          The statute also creates a discovery rule that permits a claim to be brought up to two

5   years after the date of discovery of a violation.  Defendant contends that any claims originating

6   prior to December 3, 2007 are time-barred because they were discovered by Plaintiff more than

7   two years before this action was filed.  However, Plaintiff contends that Defendant has not met

8   its burden to show that there is no factual issue regarding whether Plaintiff discovered any FCRA

9   violations within two years of the filing of this action.  As noted, any claims arising prior to

10  December 3, 2004 are barred regardless of the date of discovery.  The question then remains

11  whether any claims arising between December 3, 2004 and December 3, 2007 are barred by the

12  discovery rule.

13         Plaintiff has not explicitly set forth a claim for a violation occurring in the time period

14  between December 3, 2004 and December 3, 2007.  However, to the extent that Plaintiff is

15  seeking damages for any claims that occurred during this period, it is unclear exactly of what

16  Plaintiff was aware.  As such, it cannot be said that any violations that occurred between

17  December 3, 2004 and December 3, 2007 are barred by the discovery rule as a matter of law.

18  **B.  Business Damages**

19         The parties dispute whether damage caused by mistaken credit information supplied for

20  commercial business transactions, as opposed to consumer transactions, is recoverable under the

21  FCRA.  Defendant argues that where the credit report is used for business purposes, any alleged

22  violations are not covered by the FCRA, which was meant to protect individual consumers.

23  Thus, according to Defendant, a report used strictly for business purposes cannot be considered a

24  "consumer report" under the FCRA.  By contrast, Plaintiff argues that damage incurred due to a

1  denial of credit that results in harm to a person's business is within the protection afforded by the

2  FCRA.

3   In *Johnson v. Wells Fargo Home Mortgage, Inc.*, the court specifically held that losses

4  resulting from use of credit report solely for business or commercial transactions are not

5  recoverable under the FCRA.  558 F.Supp.2d 1114, 1122 (D. Nev. 2008).  In relevant part, the

6  opinion explains that:

7   The term "consumer" is defined as an individual. 15 U.S.C. § 1681a(c). Therefore, it
    follows that the FCRA is designed to protect consumers in their individual capacities. In
8   order to prove actual damages under the FCRA, Plaintiff must show Defendant's
    violation caused Plaintiff, as an individual consumer, the alleged damages he claims …

9
    *Id*.
10
    *Johnson* goes on to quote the congressional sponsor of the FCRA:
11
    The purpose of the Fair Credit Reporting Bill is to protect *consumers* from inaccurate or
12  arbitrary information in a consumer report which is used as a factor in determining an
    individual's eligibility for credit, insurance or employment. *It does not apply to reports*
13  *used for business, commercial or professional purposes*.

14 *Id*. at 1123 (citing 116 Cong. Record 36,572 (1970)) (emphasis added).

15   Additionally, the *Johnson* court specifically rejected a plaintiff's argument that the term

16 "business transaction that is initiated by the consumer" covers all business and commercial

17 transactions initiated by the plaintiff regardless of whether those transactions were consumer

18 transactions.  *Id*. at 1124.  The court regarded such an interpretation as an expansion of the scope

19 and coverage of the FCRA to include all business and commercial transactions.  *Id*.

20   Furthermore, the interpretation in *Johnson* is consistent with Ninth Circuit authority

21 favoring a narrow interpretation of the term "business transaction."  In *Mone v. Dranow*, the

22 Ninth Circuit concluded that credit "[r]eports used for business, commercial or professional

23 purposes are not within the purview of the statute."  945 F.2d 306, 308 (9th Cir. 1991).  The

24

1  *Mone* opinion also looked to the records of Congress and states that "Congress intended the

2  FCRA to authorize a credit reporting agency to issue a consumer report to determine 'an

3  individual's eligibility for credit, insurance or employment.'" *Id*. (citing 116 Cong. Rec. 36, 572

4  (1970)).

5        Plaintiff relies on *Dennis v. BEH-1* to support the proposition that a person using their

6  personal credit report to seek credit for a business purpose can claim actual damages resulting

7  from the denial of credit.  520 F.3d 1066 (9th Cir. 2008).  *Dennis* states in relevant part:

8      The only blemish on [plaintiff's] credit report … was the erroneously reported judgment.
    According to [plaintiff], that was enough to cause several lenders to decline his
9      applications for credit, dashing his hopes of starting a new business.  [Plaintiff] also
    claims that Experian's error caused his next landlord to demand that [he] pay a greater
10      security deposit.  In addition to those tangible harms, Dennis claims that [defendant's]
    inaccurate report caused him emotional distress, which we've held to be "actual
11      damages."

12  *Id* at 1069.

13  In light of clear Ninth Circuit authority, discussed *supra*, holding that losses resulting from use

14  of a credit report solely for business or commercial transactions are not recoverable under the

15  FCRA, it goes too far to interpret *Dennis* in the manner that Plaintiff suggests.  The *Dennis* court

16  discussed damage suffered by plaintiff when he attempted to take out personal loans in his

17  personal capacity.  In the present case, Plaintiff's business was already a corporate entity, with a

18  distinct existence.  Plaintiff may not seek damages incurred by his business, which is a distinct

19  corporate entity.

20  **C.  Section 1681b**

21        Plaintiff brings a claim under § 1681b(a)(3)(A) of the FCRA, alleging that Defendant

22  furnished credit reports without a lawful purpose by giving Plaintiff's report to companies in

23  connection with a transaction that did not involve Plaintiff, but likely involved his brother.

24  Defendant contends that the claim is meritless because the credit reports were allegedly disclosed

1  prior to the merger of Plaintiff's file with that of his brother, and therefore could not have
2  resulted in the improper release of information.  Defendant is correct in that Plaintiff points to
3  specific inquiries which were indeed made prior to the merger.  Dkt. #60, Plf. Decl. ¶ 10 & Ex.
4  C.  However, Plaintiff denies that he ever sought credit from the companies and as such argues
5  they should never have received Plaintiff's credit report.  Given that Plaintiff states that he never
6  transacted with the companies who requested Plaintiff's information, the fact that Defendant
7  furnished reports prior to the combination of the files does not remove any issue of fact where, as
8  alleged by Plaintiff, the credit reports may have nonetheless been wrongfully disclosed.

**D.  Section 1681g**

Plaintiff's Amended Complaint (Dkt. #50) added a claim alleging that Defendant failed to provide Plaintiff with a copy of his credit report upon request on two occasions in July 2010. Defendant argues that Plaintiff's inclusion of this claim in the Amended Complaint, filed on March 3, 2011, is untimely and should have been included in a supplemental response to interrogatories.  Defendant's concern is unfounded.  As this Court indicated in its Order (Dkt. #49) granting the Motion to Amend, a court should freely and liberally grant leave to amend a pleading when justice requires.  *See* Fed. R. Civ. P. 15.  A party may bring an amendment even after trial has begun, and Defendants have not demonstrated any prejudice as a result of the amendment.

**E.  Willful Noncompliance**

Section 1681n permits a plaintiff to recover statutory and punitive damages for willful violations of the FCRA.  In *Safeco Insurance Co. of Am. v Burr*, the Supreme Court concluded that a willful violation of § 1681n may include conduct that is reckless.  551 U.S. 47 (2007).  The Supreme Court has held that "a company subject to the FCRA does not act in reckless disregard of [the statute] unless the action is not only a violation under a reasonable reading of the statute's

1 terms, but shows that the company ran a risk of violating the law substantially greater than the
2 risk associated with a reading that was merely careless." *Id*. at 69.

3 As in *Lambert v. Beneficial Mortgage Corporation*, Plaintiff has alleged numerous
4 violations of the FCRA. No. 05-5468 2007 WL 1309542 at *6 (W.D. Wash. May 4, 2007).
5 Defendant contends that since *Lambert* was decided, the *Safeco* decision altered the standard for
6 willfulness under the FCRA and affirmed that a court can decide the issue of willfulness as a
7 matter of law. Indeed, in *Safeco* the Supreme Court found that the conduct in question in that
8 case did not rise to recklessness as a matter of law. 551 U.S. at 69. At issue was the defendant's
9 reading of a portion of the FCRA as it related to defendant's transmission of adverse action
10 notices to plaintiffs. The decision rested largely upon the fact that defendants had read the
11 portion of the statute erroneously, but not unreasonably, especially considering the lack of
12 authority concerning the provisions in question. *Id.* Furthermore, the only FCRA violations
13 alleged were the failure to provide notice of adverse actions as required.

14 However, the case at hand differs significantly from *Safeco*. The portions of the statute
15 Defendant allegedly violated are clear, and there is no reason to suspect Defendant did not
16 adequately understand its duties established by the statute. Moreover, Plaintiff alleges numerous
17 violations, and contends that Defendant furnished credit reports without a lawful purpose, failed
18 to provide a copy of the credit report upon request, failed to conduct a reasonable reinvestigation,
19 failed to provide notice of dispute to furnishers of information, and failed to follow reasonable
20 procedures to assure the maximum possible accuracy. Defendant counters that under the
21 circumstances in which Plaintiff and his brother have nearly identical indentifying information,
22 Defendant's error cannot be construed as more than mere carelessness. However, Defendant's
23 alleged failure to correct the inaccuracies after alleged communications from Plaintiff, along
24

1 with the numerous alleged violations creates at least an issue of material fact as to whether
2 Defendant's conduct is sufficient to constitute recklessness.

## F. State Law Claims

### 1. Defamation

Pursuant to § 1681h(e) of the FCRA, "no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency … except as to false information furnished with malice or willful intent to injure such consumer."  Having determined that Plaintiff raises an issue of material fact as to whether Defendant's conduct can be considered willful, Plaintiff is not prohibited from bringing a defamation claim under the FCRA.  The Court now turns to the substantive requirements for a defamation claim.  In Washington, "[i]n order to prove a claim for defamation, four elements must be established: (1) falsity, (2) an unprivileged communication, (3) fault, and (4) damages." *Van Hoven v. Pre-Employee.com, Inc.*, 156 Wn.App. 879, 885. Plaintiff has met the requisite elements to present a claim for defamation to the jury.

### 2. Washington Consumer Protection Act

Defendant cites *Dvorak v. AMC Mortgage Servs.*, in contending that claims under the Washington Consumer Protection Act are preempted by the FCRA.  No. 06-5072 2007 WL 4207220 (E.D. Wash. Nov. 26, 2007).  However, *Dvorak* is inapposite.  *Dvorak* discusses the specific issue of whether the WCPA is preempted by § 1681t(b)(1)(F) of the FCRA.  No claims have been brought that would render § 1681t(b)(1)(F) relevant in the present case.  As such, there is no reason for the Court to conclude that the WCPA is preempted by the FCRA.

## V. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS that Defendant's Motion for Summary Judgment is GRANTED as to the claim for business damages and as to all alleged violations occurring before December 3, 2004, which are time-barred, and DENIED as to all remaining claims.

Dated this 3rd day of June 2011.

_____
RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE